# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| QUINN EMANUEL URQUHART<br>  & SULLIVAN, LLP,<br><br><br>                   Plaintiff,<br><br><br>                        v.<br><br><br>NANO DIMENSION LTD. and OFIR<br>BAHARAV,<br><br><br>                   Defendants. | Civil Action No.:  1:25-cv-12159-BEM<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFF QUINN EMANUEL URQUHART & SULLIVAN'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO REMAND**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................3

      A.     Desktop Metal's Lawsuit Against Nano .................................................................3

      B.     Desktop Metal's Retention Of Quinn Emanuel And Victory Against Nano ..........4

      C.     Defendants Block Desktop Metal From Paying Quinn Emanuel ..........................5

      D.     Procedural History ................................................................................................7

LEGAL STANDARD.............................................................................................................7

ARGUMENT .........................................................................................................................8

I.      THIS COURT LACKS SUBJECT-MATTER JURISDICTION .......................................8

      A.     A Judgment In This Case Will Not Affect The Bankruptcy Estate .......................9

      B.     Discovery In This Case Will Not Affect The Bankruptcy Estate .........................13

      C.     Mr. Baharav's Hypothetical Indemnification Will Not Affect The
            Bankruptcy Estate ..............................................................................................14

      D.     Quinn Emanuel's Claims Do Not Belong To The Bankruptcy Estate..................15

II.     EVEN IF THIS COURT HAS SUBJECT-MATTER JURISDICTION, IT
      SHOULD STILL REMAND ..........................................................................................16

      A.     This Court Should Remand As A Matter Of Mandatory Abstention ...................16

      B.     This Court Should Remand As A Matter Of Permissive Abstention ...................18

CONCLUSION.....................................................................................................................20

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*In re Am. Cartage, Inc.*,
  656 F.3d 82 (1st Cir. 2011) ................................................................................15, 16

*Auctus Fund, LLC v. Drone Guarder, Inc.*,
  588 F. Supp. 3d 177 (D. Mass. 2022) ........................................................................17

*In re Bernard L. Madoff Inv. Sec. LLC*,
   561 B.R. 334 (Bankr. S.D.N.Y. 2016) ......................................................................12

*Bibeault v. CVS Pharmacy, Inc.*,
  2019 WL 3546889 (D. Mass. June 21, 2019) ......................................................14, 19

*Blue Cross of Cal. v. Sonoma W. Med. Ctr., Inc.*,
  2019 WL 926329 (C.D. Cal. Feb. 7, 2019) ................................................................14

*Borintex Mfg. Corp. v. Banco Gubernamental de Fomento Para P.R.*,
  102 B.R. 8 (D.P.R. 1989) ............................................................................................17

*In re Bos. Reg'l Med. Ctr., Inc.*,
  410 F.3d 100 (1st Cir. 2005) ........................................................................................9

*In re C & A, S.E.*,
  360 B.R. 12 (Bankr. D.P.R. 2006) ..............................................................................19

*C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*,
  369 B.R. 87 (D.P.R. 2007) ....................................................................................17, 18

*Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co.*,
  2010 WL 6580503 (D. Mass. Dec. 28, 2010) ..................................................2, 17, 18, 19, 20

*In re Candelero Sand & Gravel, Inc.*,
  66 B.R. 903 (D.P.R. 1986) ..........................................................................................18

*In re Canion*,
  196 F.3d 579 (5th Cir. 1999) ......................................................................................11

*Cent. Me. Rest. Supply v. Omni Hotels Mgmt. Corp.*,
  73 B.R. 1018 (D. Me. 1987)  .......................................................................................13

*Corbin v. Salkovitz*,
  2024 WL 4652481 (D. Mass. Nov. 1, 2024) ........................................................19, 20

*In re Curtina Int'l,*
    15 B.R. 993 (Bankr. S.D.N.Y 1981)......................................................................16

*Danca v. Priv. Health Care Sys., Inc.,*
    185 F.3d 1 (1st Cir. 1999)....................................................................................8

*Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.,*
    568 F. Supp. 2d 329 (S.D.N.Y. 2008)................................................................10

*Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.,*
    130 B.R. 405 (S.D.N.Y. 1991)............................................................................19

*Fed. Home Loan Bank of Bos. v. Ally Fin., Inc.,*
    2012 WL 769731 (D. Mass. Mar. 9, 2012)........................................................19

*Fin. Oversight & Mgmt. Bd. for P.R. v. Est. of Serrano,*
    102 F.4th 527 (1st Cir. 2024).............................................................................16

*Fratelli Cosulich Unipessoal, S.A. v. Specialty Fuels Bunkering, LLC,*
    2014 WL 2611547 (S.D. Ala. June 11, 2014) ...................................................14

*In re G.S.F. Corp.,*
    938 F.2d 1467 (1st Cir. 1991) ...........................................................................12

*H1 Lincoln, Inc. v. S. Wash. St., LLC,*
    489 Mass. 1 (2022) .............................................................................................11

*Harrington v. Purdue Pharma L. P.,*
    603 U.S. 204 (2024) ...........................................................................................11

*Honor v. Johnson & Johnson,*
    2019 WL 2521641 (D. Mass. June 19, 2019) ..............................................14, 15

*In re Hous. Reg'l Sports Network, L.P.,*
    514 B.R. 211 (Bankr. S.D. Tex. 2014) ..............................................................18

*Mariano v. Simpson Thacher & Bartlett, LLP,*
    587 B.R. 568 (Bankr. S.D. Fla. 2018)................................................................11

*Marotta Gund Budd & Dzera LLC v. Costa,*
    340 B.R. 661 (D.N.H. 2006) .............................................................................12

*In re Middlesex Power Equip. & Marine, Inc.,*
    292 F.3d 61 (1st Cir. 2002).................................................................................8

*In re Miller,*
    262 B.R. 499 (B.A.P. 9th Cir. 2001)..................................................................13

*In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*,
    496 B.R. 256 (D. Mass. 2013) ...................................................................15

*In re NSCO, Inc.*,
    427 B.R. 165 (Bankr. D. Mass. 2010) ......................................................12

*O'Riorden v. Johnson & Johnson*,
    2019 WL 2371782 (D. Mass. June 5, 2019) .............................................19

*Pacor, Inc. v. Higgins*,
    743 F.2d 984 (3rd Cir. 1984) ...............................................................2, 12

*In re Punto Aparte/Cima Publicidad, Inc.*,
    2009 WL 249429 (Bankr. D.P.R. Jan. 30, 2009)......................................17

*Renaud v. Gen. Motors Corp.*,
    316 F. Supp. 2d 77 (D. Mass. 2004) ........................................................10

*Royal Canin U. S. A., Inc. v. Wullschleger*,
    604 U.S. 22 (2025)....................................................................................15

*In re Santa Clara Cnty. Child Care Consortium*,
    223 B.R. 40 (B.A.P. 1st Cir. 1998) ..........................................8, 9, 13, 18

*Springer v. Ernst & Young, LLP*,
    2005 WL 1566554 (N.D. Cal. July 5, 2005) ...........................................13

*Sullivan v. Finn*,
    2018 WL 1222672 (N.D. Cal. Mar. 8, 2018)........................................2, 11

*In re Surprise*,
    443 B.R. 258 (Bankr. D. Mass. 2011) ................................................10, 16

*T & K Asphalt Servs., Inc. v. DDRC Gateway, LLC*,
    976 F. Supp. 2d 38 (D. Mass. 2013) ..............................8, 9, 11, 13, 15

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) .................................................................................12

*TD Bank, N.A. v. Sewall*,
    419 B.R. 103 (D. Me. 2009) ......................................................................9

*In re VideOcart, Inc.*,
    165 B.R. 740 (Bankr. D. Mass. 1994) ......................................................15

*In re Wood*,
    825 F.2d 90 (5th Cir. 1987) .......................................................................8

*In re W.R. Grace & Co.*,
  412 B.R. 657 (D. Del. 2009) ........................................................................14

*In re Zale Corp.*,
  62 F.3d 746 (5th Cir. 1995) ....................................................................2, 11

## **Statutes**

11 U.S.C. § 524(e) ...........................................................................................11

11 U.S.C. § 1141(d)(3) .....................................................................................11

28 U.S.C. § 1334 ................................................................................................1

28 U.S.C. § 1334(b) ...................................................................................1, 7, 8

28 U.S.C. § 1334(c)(1) ................................................................................2, 18

28 U.S.C. § 1334(c)(2) ................................................................................2, 16

28 U.S.C. § 1441 ................................................................................................1

28 U.S.C. § 1447 ................................................................................................1

28 U.S.C. § 1447(c) ...........................................................................................8

28 U.S.C. § 1452(b) ...............................................................................2, 8, 18

Plaintiff Quinn Emanuel Urquhart & Sullivan, LLP respectfully submits this memorandum of law in support of its motion to remand this action to Massachusetts Superior Court under 28 U.S.C. §§ 1334, 1441, 1447, and 1452.

## INTRODUCTION

Quinn Emanuel is a globally renowned law firm that represented non-party Desktop Metal, Inc. in a bet-the-company case in the Delaware Court of Chancery to force Defendant Nano Dimension Ltd. to purchase Desktop Metal under a merger agreement.  After litigating novel issues in just three months from filing to final judgment, Quinn Emanuel won the case and saved Desktop Metal.  For its efforts, Quinn Emanuel received sterling praise from the Delaware court, the press, and, most importantly, the client.  But Quinn Emanuel has not been paid a dime of the $30 million it is owed.  Nano and its former CEO, Defendant Ofir Baharav, used their new control over Desktop Metal to block it from paying Quinn Emanuel out of spite for its success in the Delaware case.  Quinn Emanuel sued Defendants in Massachusetts Superior Court for various state-law claims.  Defendants responded by forcing Desktop Metal into bankruptcy and removing this case.

This case does not belong in federal court.  Quinn Emanuel's claims all arise under state law, belong to Quinn Emanuel, and could have no impact on Desktop Metal, which will soon be liquidated.  This Court should remand to Massachusetts Superior Court, for three reasons.

*First*, this Court must remand because this Court lacks subject-matter jurisdiction.  Defendants contend that this Court has jurisdiction under 28 U.S.C. § 1334(b) because this case is "related to" the Desktop Metal bankruptcy proceeding.  But a case is "related to" a bankruptcy proceeding only if it could impact the debtor's rights and liabilities, not if the complaint mentions the bankruptcy as context for its allegations.  This case could not affect Desktop Metal's rights and liabilities.  Quinn Emanuel here seeks damages only against Defendants, not against Desktop Metal.  Defendants pretend that this case overlaps with issues to be litigated in Quinn Emanuel's

1

claims against Desktop Metal.  Not so, but in any case, "common facts alone are insufficient to confer 'related to' jurisdiction." *Sullivan v. Finn*, 2018 WL 1222672, at *4 (N.D. Cal. Mar. 8, 2018) (citation omitted); *see, e.g.*, *In re Zale Corp.*, 62 F.3d 746, 753 n.21 (5th Cir. 1995) (collecting cases).  What matters is that this case will not be issue preclusive against Desktop Metal because it is not a party here.  *See, e.g.*, *Pacor, Inc. v. Higgins*, 743 F.2d 984, 995 (3rd Cir. 1984), *overruled on other grounds by Things Remembered v. Petrarca,* 516 U.S. 124 (1995).  Defendants' other arguments for "related to" jurisdiction—that Quinn Emanuel might recover some discovery from Desktop Metal and Mr. Baharav might have an indemnification agreement—are irrelevant.

*Second*, even if this Court had subject-matter jurisdiction, 28 U.S.C. § 1334(c)(2) requires a court to abstain from hearing a "related to" jurisdiction case and remand to state court when a plaintiff promptly moves to remand, the plaintiff brings only state-law claims, the court does not otherwise have jurisdiction, and the state court action can be timely adjudicated.  *See Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co.*, 2010 WL 6580503, at *6 (D. Mass. Dec. 28, 2010).  These factors all apply here, and the issue is not remotely close.  Mandatory abstention is thus required under Section 1334(c)(2) even if this Court had jurisdiction.  Keeping this case in federal court and ultimately transferring to the Texas bankruptcy court, as Defendants urge, would undermine federal-state comity and deprive Quinn Emanuel of its chosen forum.

*Finally*, 28 U.S.C. §§ 1334(c)(1) and 1452(b) allow for permissive abstention and remand to state court when a case exclusively involves state-law claims, and the case poses little chance of affecting the bankruptcy estate.  These factors favor abstention and remand too.  Even if this case could conceivably affect the bankruptcy proceeding (and it could not), the connection is so attenuated that this Court should decline to exercise jurisdiction.

For all of these reasons, the Court should grant Quinn Emanuel's motion to remand.

## BACKGROUND

A.      **Desktop Metal's Lawsuit Against Nano**

Desktop Metal is a major player in the 3D printing industry that, until recently, was listed on the New York Stock Exchange.  Dkt. 13 ("SAC") ¶¶ 16-17.  But Desktop Metal was burning cash, and so, starting in 2022, its directors looked to sell Desktop Metal to take advantage of consolidation in the industry.  *Id.* ¶ 18.  After extensive negotiations, Nano, a NASDAQ-listed Israeli company that designs and manufactures additive electronics, additive manufacturing 3D printing machines, and consumable materials, ultimately agreed to purchase Desktop Metal in mid-2024.  *Id.* ¶¶ 19-23.  Desktop Metal and Nano negotiated a merger agreement under which Nano would acquire Desktop Metal for approximately $183 million.  *Id.* ¶ 23.

Mr. Baharav, a former CEO of Nano who had been pushed out of his job by the then-CEO and nursed a grudge, spied an opportunity to take back control of his old company.  *Id.* ¶ 24.  He launched a proxy fight to take over Nano from his old rival, running on the platform that Nano's deal to take over Desktop Metal was ruining the company.  *Id.*  Instead, he argued, Nano should pull out of the merger agreement, let Desktop Metal fall into bankruptcy, and scoop up its assets at bargain prices.  *Id.* ¶¶ 24-26.  Mr. Baharav was successful:  He was elected Chairman of Nano's board in December 2024, and used this control to purge Nano's board of directors and executives who had supported the acquisition of Desktop Metal.  *Id.* ¶ 27.

Mr. Baharav then used his control of Nano to execute a bad-faith scheme to back out of the agreement, so that he could carry out his goal of driving Desktop Metal into bankruptcy and scoop up its assets at bargain prices.  *Id.* ¶ 28.  His plan was simple:  stonewall the regulatory approval process.  *Id.*  Because Desktop Metal's printers have military applications, the parties expected that the merger agreement would have to be reviewed and approved by the Committee on Foreign Investment in the United States ("CFIUS").  *Id.*  To mitigate the risk that CFIUS would block the

merger, the merger agreement required Nano to cooperate with Desktop Metal to secure CFIUS approvals. *Id.* Mr. Baharav caused Nano to drag its feet in the CFIUS approval process, all but ensuring that CFIUS would block the deal. *Id.* ¶¶ 28-29.

These delays ultimately forced Desktop Metal to sue Nano for specific performance to comply with its obligations under the merger agreement in the Delaware Court of Chancery. *Id.* ¶ 30. But there was no time to litigate the case: Desktop Metal sued in December 2024, the merger agreement required that the deal close by March 31, 2025, and no "busted-deal" case, let alone one involving novel CFIUS-review issues, had ever been litigated so quickly. *Id.* ¶ 33. And if the acquisition did not close, Desktop Metal would run out of cash. *Id.* ¶ 34.

## B.    Desktop Metal's Retention Of Quinn Emanuel And Victory Against Nano

Desktop Metal accordingly turned to Quinn Emanuel, the world's leading litigation firm with singular experience in "busted deal" cases, to represent it in its "bet-the-company" case against Nano. SAC ¶ 35. Quinn Emanuel gave Desktop Metal an extremely generous deal, shouldering much of the risk for itself. *Id.* ¶ 37. Quinn Emanuel disclosed its full billing rates, but agreed to work on the case at 50% of its normal hourly rates and also not to charge Desktop Metal for the first $150,000 incurred in the case. *Id.* ¶¶ 36-37. But if Quinn Emanuel prevailed, the parties agreed, Desktop Metal would pay Quinn Emanuel 120% of its normal hourly rates. *Id.* ¶ 38. To further protect Quinn Emanuel, the parties' contract gave Quinn Emanuel an attorney lien on any funds recovered in the litigation. *Id.* ¶ 42.

Quinn Emanuel devoted substantial resources to the case, working night and day to prepare for and try the case in the three months between filing and final judgment. *Id.* ¶ 44. Twenty-seven attorneys, ranging from first-year associates to managing partners, contributed. *Id.* ¶ 45. During that time, Quinn Emanuel's team (1) produced tens of thousands of documents; (2) took and defended 22 depositions; (3) briefed several motions; (4) met or communicated near-daily with

Desktop Metal to develop and implement various litigation strategies; and (5) conducted a 2-day trial, where the record comprised 2,620 trial exhibits, live testimony from 7 fact and 4 expert witnesses, deposition testimony from 20 witnesses, and 47 stipulations of fact.  *Id.* ¶ 46.

The work paid off.  In late March, the Delaware Court of Chancery found that Nano deliberately delayed, obstructed, and avoided closing the merger, in breach of its obligations under the contract, and ordered Nano to complete the transaction.  SAC ¶ 47.  The court called Quinn Emanuel's efforts "herculean."  *Id.*  Quinn Emanuel's performance was heavily praised elsewhere too, with its attorneys recognized by Law.com as "Litigators of the Week."  *Id.* ¶ 48.  The merger closed in early April, and Desktop Metal became a wholly-owned subsidiary of Nano.  *Id.* ¶ 49.

### C.    Defendants Block Desktop Metal From Paying Quinn Emanuel

Having learned in the Delaware proceedings about Defendants' history of bad faith, Quinn Emanuel became concerned that, after the deal closed, Nano and Mr. Baharav would, out of spite towards the firm that defeated them, use their control over Desktop Metal to block it from paying Quinn Emanuel and its vendors.  SAC ¶ 50.  This was, after all, the same playbook that Defendants had employed to stop the merger agreement:  Take over the company and disavow its contracts.  *Id.*  True to form, the Nano-controlled Desktop Metal reverted to Defendants' old tricks that Defendants previously used against Desktop Metal:  Delay, deception, and sharp tactics.  *Id.* ¶ 52.

Because Quinn Emanuel had an attorney lien, Nano was required to pay Quinn Emanuel first out of the funds that it paid to the Desktop Metal shareholders under the Delaware Court of Chancery's final judgment.  *Id.* ¶ 53.  Nano refused to do so.  *Id.* ¶ 55.

Defendants then used their control to block Desktop Metal from paying Quinn Emanuel even a dollar of the approximately $30 million in fees owed.  *Id.* ¶ 59.  Desktop Metal never conveyed that it intends to pay, nor has it identified any dispute that it has with Quinn Emanuel's bills.  *Id.* ¶¶ 60-61.  Quinn Emanuel accordingly was forced to commence an arbitration against

Desktop Metal, and to seek an attachment of Desktop Metal's assets in New York state court. *Id.* ¶¶ 57-58. Desktop Metal stalled these proceedings by pretextually contending that it had not repudiated its contract obligations but was just taking the time to review Quinn Emanuel's bills. *Id.* ¶ 58. Months passed, and Desktop Metal did not express any willingness to pay Quinn Emanuel or negotiate. *Id.* ¶ 59. Desktop Metal also pretended that it was solvent in an effort to convince the New York court to deny Quinn Emanuel's request for attachment of its assets. *Id.* ¶ 64.

The New York state court eventually saw through Desktop Metal's empty reassurances and granted Quinn Emanuel an attachment of $34 million against Desktop Metal. *Id.* ¶ 66. The court noted that "no payments have been made" in the two and a half months since Quinn Emanuel's full bills became due; that "there is no real dispute that Quinn has shown" that it is likely to prevail on its claims against Desktop Metal, given that Desktop Metal "has shown no intention of paying" its bills; and that Desktop Metal's "refusal to assure its former lawyers that it will pay for their 'herculean' efforts in the Delaware case [is] . . . troubling." *Id.*

Despite repeatedly implying to the New York state court that it was solvent, just three days after the attachment order issued, Desktop Metal informed Quinn Emanuel that it would file for bankruptcy. *Id.* ¶ 67. This was done to obtain a bankruptcy stay before Quinn Emanuel could levy on Desktop Metal's property, which would have mooted the attachment order. *Id.*

There is no question that Defendants are responsible for Desktop Metal's wrongful conduct. Desktop Metal did not act wrongfully before, and a rational company would not have stonewalled one of its largest creditors and refused to engage at all in a fee dispute. SAC ¶¶ 68-69. By contrast, this is the very sort of bad faith deception and delay tactics that the Delaware Court of Chancery found that Defendants engaged in when seeking to unwind their acquisition of Desktop Metal. *Id.* ¶¶ 47, 70. Desktop Metal also conceded in the New York proceeding that its

new owners were directing it not to pay Quinn Emanuel. *Id.* ¶ 71. Nano also has 100% ownership of Desktop Metal, gave Desktop Metal funding to cover its debts, paid for Desktop Metal's lawyers, and appointed Mr. Baharav—who controlled Nano—to be a director for Desktop Metal so that he could implement its vision. *Id.* ¶¶ 72-74.

This is not the only instance in which Nano has stiffed creditors for disputes arising out of the Delaware litigation either. It has also refused to pay the expert firm it retained during trial, Charles River Associates; breached a contractual duty to pay its former CEO who resigned when Mr. Baharav took over Nano; and breached contractual duties under the merger agreement to pay Desktop Metal's former officers. This company and these individuals have accordingly sued Nano. *See* Decl. of Alex H. Loomis ("Loomis Decl."), Exs. A-C. Defendants, in short, carry on their business in Massachusetts through a pattern of unfair and deceptive practices.

### D.    Procedural History

In early July, Quinn Emanuel sued Defendants in Massachusetts Superior Court, Suffolk County, and the case was assigned to the Business Litigation Section. Dkt. 1-3. Two weeks later, the New York state court granted Quinn Emanuel its attachment. SAC ¶ 66. Three days after that, Desktop Metal informed Quinn Emanuel that it would file for bankruptcy, which it did on July 28. *Id.* ¶ 67. Defendants removed this case to federal court just days later. Dkt. 1.

Quinn Emanuel amended its complaint and now brings claims against Defendants to enforce its attorney lien, for tortious interference with its contract with Desktop Metal, and for unfair and deceptive trade practices under Chapter 93A. SAC ¶¶ 85-107.

## LEGAL STANDARD

28 U.S.C. § 1452(a) allows for removal "to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1334(b), in turn, provides that a "district courts shall have

original but not exclusive jurisdiction of all civil proceedings arising under title 11 [*i.e.*, the bankruptcy code], or arising in or related to cases under title 11."

"When presented with a motion to remand a proceeding which has been removed from the state court, the bankruptcy court must first evaluate whether the state court action was properly removed; that is, it must determine whether it has subject matter jurisdiction over the proceeding." *In re Santa Clara Cnty. Child Care Consortium*, 223 B.R. 40, 44 (B.A.P. 1st Cir. 1998). If not, "then [the district court] may not hear the matter and the case should be remanded pursuant to 28 U.S.C. § 1447(c)." *Id.* "[R]emoval statutes are strictly construed, and defendants have the burden of showing the federal court's jurisdiction." *Danca v. Priv. Health Care Sys., Inc.,* 185 F.3d 1, 4 (1st Cir. 1999) (internal citation omitted); *see, e.g.*, *T & K Asphalt Servs., Inc. v. DDRC Gateway, LLC*, 976 F. Supp. 2d 38, 42 (D. Mass. 2013) (same, for bankruptcy removal).

Even "if the court has jurisdiction, further basis for remanding a removed cause of action lies in 28 U.S.C. § 1452(b), which provides that the court to which a claim or cause of action is removed may remand the claim or cause of action on any equitable ground." *Santa Clara*, 233 B.R. at 44.

## ARGUMENT

## I.    THIS COURT LACKS SUBJECT-MATTER JURISDICTION

This Court cannot exercise subject-matter jurisdiction unless Quinn Emanuel's claims "arise under," "arise in," or are "related to" the chapter 11 bankruptcy under 28 U.S.C. § 1334(b). Defendants do not contend that Quinn Emanuel's claims arise under title 11 or arise in the bankruptcy proceeding. Dkt. 1 ¶¶ 10-18. Nor could they. Claims "arise under" title 11 only if "the cause of action is created by title 11," and claims "arise in" title 11 bankruptcy proceedings only if they "would have no existence outside of the bankruptcy." *In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d 61, 68 (1st Cir. 2002) (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir.

1987)).  Quinn Emanuel's claims arise under state law, not title 11, arose before Desktop Metal's bankruptcy, and thus would exist even if Desktop Metal had not declared bankruptcy.  *See* SAC ¶¶ 85-107.  Subject-matter jurisdiction thus hinges on Defendants establishing that Quinn Emanuel's claims are "related to" the Desktop Metal bankruptcy proceeding.

Defendants cannot meet this burden.  "The jurisdiction of the bankruptcy courts to hear related matters is broad but not unlimited."  *Santa Clara*, 223 B.R. at 45.  As Defendants acknowledge (Dkt. 1 ¶ 13), claims are "related to" a bankruptcy proceeding only if resolution of those claims "could conceivably have any effect on the estate being administered in bankruptcy." *Santa Clara*, 223 B.R. at 44-45.  That requires a showing that "the outcome [here] could alter [Desktop Metal's] rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  *Id.* at 45 (internal citation omitted).  Theorizing that claims may have "some hypothetical effect on the [] bankruptcy in the future" does not suffice.  *T & K Asphalt*, 976 F. Supp. 2d at 42.  "'[W]hat is 'related to' a proceeding under title 11 in one context may be unrelated in another' because the bankruptcy court's jurisdiction depends on the actual effect of a proceeding on the restructuring of debtor-creditor relations."  *TD Bank, N.A. v. Sewall*, 419 B.R. 103, 106 (D. Me. 2009) (quoting *In re Bos. Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 107 (1st Cir. 2005)).

Defendants make four arguments as to why Quinn Emanuel's claims are "related to" the Desktop Metal bankruptcy.  None are persuasive.

### A.    A Judgment In This Case Will Not Affect The Bankruptcy Estate

Defendants first contend (Dkt. 1 ¶ 15) that resolving Quinn Emanuel's claims against them "requires a court to determine the extent of [Desktop Metal's] liabilities," including potential "defenses" and counterclaims that Desktop Metal may have against Quinn Emanuel.  Not so.

Quinn Emanuel's claims against Defendants are to enforce its attorney lien against Nano, for Nano's tortious interference with Quinn Emanuel's contract, and for Nano's unfair and deceptive trade practices. These claims, "without question, are not property of [the] bankruptcy estate. Any recovery thereon would go to [Quinn Emanuel] alone. No rights would be created for the benefit of the estate or would impact the claims against the estate." *In re Surprise*, 443 B.R. 258, 262 (Bankr. D. Mass. 2011) (finding no "related to" jurisdiction" for these reasons alone).

Defendants offer no explanation why, and cite no authority suggesting that, their liability hinges on Desktop Metal's liability; that they can borrow purported offsets or defenses that Desktop Metal has to defend against attorney-lien, tortious interference, and Chapter 93A claims, like those pressed here; or that Desktop Metal even has any such defenses or counterclaims. All three claims can proceed even if Quinn Emanuel's contract with Desktop Metal were deemed unenforceable. *See, e.g.*, *Renaud v. Gen. Motors Corp.*, 316 F. Supp. 2d 77, 82 n.15 (D. Mass. 2004) (attorney-lien claim can be based on quantum meruit theory); *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 347 (S.D.N.Y. 2008) (tortious interference claim can proceed even if contract is voidable).

Plus, Quinn Emanuel's claims against Desktop Metal will play no role here because Desktop Metal's liability is straightforward: Desktop Metal has conceded in the New York attachment proceeding that it had a valid contract with Quinn Emanuel; Desktop Metal agreed to pay Quinn Emanuel's hourly rates; Quinn Emanuel obtained a "herculean" result for Desktop Metal; Desktop Metal has not paid Quinn Emanuel one penny of fees and costs due; and Desktop Metal has not asserted any counterclaims. *See* SAC ¶¶ 8, 59; Loomis Decl., Ex. D ¶¶ 2-4. Desktop Metal has telegraphed that it may argue that the fees are "unreasonable." Loomis Decl., Ex. D at 5 (Fourth Affirmative Defense). But Desktop Metal agreed in its contract to pay Quinn Emanuel's

billing rates and to challenge any billing entries in a timely manner, and Desktop Metal never did so. *See* Loomis Decl., Ex. E at 6 ("If Client has any question regarding, or wish to challenge any bill, Client shall notify us promptly of any such question or challenge, and shall in any event pay any portion of such bill that is not subject to question or challenge").  And in any case, the bankruptcy court has ordered that Desktop Metal will be liquidated in just a few weeks, and thus "will cease to exist." *In re Desktop Metal, Inc.*, No. 25-90268, Dkt. 186 at 68 (Bankr. S.D. Tex. Aug. 14, 2025) (Loomis Decl., Ex. F) ("On the Effective Date, . . . Desktop [Metal] will cease to exist").

Nano's concern about possible overlapping issues is thus "hypothetical." *T & K Asphalt*, 976 F. Supp. 2d at 42.  Desktop Metal has no defenses, will receive no discharge in its liquidating chapter 11 case, and Defendants cannot rely on any potential discharge in the chapter 11 case. *See, e.g.*, *Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 215 (2024) ("a discharge operates only for the benefit of the debtor against its creditors and 'does not affect the liability of any other entity'") (quoting 11 U.S.C. § 524(e)); 11 U.S.C. § 1141(d)(3) (excepting liquidating corporations from discharge).  Defendants' liability for tortious conduct may also prove to be broader than Desktop Metal's contractual liability, even setting aside the bankruptcy regime. *See, e.g.*, *H1 Lincoln, Inc. v. S. Wash. St., LLC*, 489 Mass. 1, 22-23 (2022) (conduct that gives rise to both Chapter 93A and contract liability may result in different damages).

Finally, even if there were common facts and issues in both cases, that "alone [is] insufficient to confer 'related to' jurisdiction." *Sullivan*, 2018 WL 1222672, at *4 (quoting *In re Canion*, 196 F.3d 579, 585 (5th Cir. 1999)); *see, e.g.*, *Zale*, 62 F.3d at 753 n.21 (collecting cases). What matters is whether this case will be issue preclusive against Desktop Metal. *See, e.g.*, *Mariano v. Simpson Thacher & Bartlett, LLP*, 587 B.R. 568, 572 (Bankr. S.D. Fla. 2018); *In re*

*Bernard L. Madoff Inv. Sec. LLC*, 561 B.R. 334, 346 (Bankr. S.D.N.Y. 2016) (same).  This case will not be issue preclusive because Desktop Metal is not a party here and plans to liquidate and cease to exist.  *See, e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) ("[O]ne is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party . . . .") (citation omitted).

 *Pacor*, 743 F.2d 984—the leading case interpreting the scope of "related to" bankruptcy jurisdiction, *see In re G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991) (adopting *Pacor* test), *overruled on other grounds by Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992); *In re NSCO, Inc.*, 427 B.R. 165, 175 (Bankr. D. Mass. 2010) (*Pacor* is "seminal")—is instructive.  The court held that a plaintiff's claim against an asbestos distributor was not related to a bankruptcy proceeding initiated by the asbestos manufacturer for this very reason.  *See Pacor,* 743 F.2d at 995.  "[T]he outcome of the [] action [against the distributor] would in no way bind [the bankrupt debtor], in that it could not determine any rights, liabilities, or course of action of the debtor.  Since [the bankrupt debtor] is not a party to the [] action [against the distributor], it could not be bound by res judicata or collateral estoppel."  *Id.*  *Pacor* acknowledged that, hypothetically, a judgment for the plaintiff might result in the distributor seeking indemnification against the bankrupt manufacturer and a judgment against the plaintiff might save the bankrupt manufacturer from such claims.  *See id.*  But that did not matter because "there would be no automatic creation of liability against [the bankrupt manufacturer] on account of a judgment against [the distributor]."  *Id.*

 So too here.  "All issues regarding [Desktop Metal's] possible liability would be resolved in [a] subsequent" proceeding in the bankruptcy court, regardless of what happens here.  *Pacor*, 743 F.2d at 995; *see, e.g.*, *Marotta Gund Budd & Dzera LLC v. Costa*, 340 B.R. 661, 670 (D.N.H. 2006) (claim against a third party relates to a bankruptcy proceeding only if a "judgment the

plaintiffs obtain in this action" would "'automatically result in liability' against the [bankrupt] debtor"); *Cent. Me. Rest. Supply v. Omni Hotels Mgmt. Corp.*, 73 B.R. 1018, 1023-24 (D. Me. 1987) (same).

      **B.**    **Discovery In This Case Will Not Affect The Bankruptcy Estate**

Defendants next assert (Dkt. 1 ¶ 16) that this Court has "related to" subject-matter jurisdiction because this case "will necessarily require discovery from the Debtor," but this does not provide a basis for subject-matter jurisdiction.  Deposing a handful of current or former Desktop Metal officers and directors or even requesting Desktop Metal documents could not "alter [Desktop Metal's] rights, liabilities, options, or freedom of action (either positively or negatively)" or otherwise "impact[] [] the handling and administration of the bankrupt estate."  *Santa Clara*, 223 B.R. at 45.  Defendants do not dispute this or cite any case holding that the potential for seeking discovery from the debtor establishes "related to" jurisdiction.  *See, e.g.*, *Springer v. Ernst & Young, LLP*, 2005 WL 1566554, at *3 (N.D. Cal. July 5, 2005) (rejecting the same argument and noting that the court had "not discovered any authority for the proposition that a state court action becomes 'related to' a bankruptcy simply because some discovery might be required of the debtor").  This is unsurprising:  Speculating about what discovery will be needed is inherently "hypothetical."  *T & K Asphalt*, 976 F. Supp. 2d at 42.  Further, Desktop Metal plans to liquidate immediately leaving no remaining officers and directors tethered to its corporate form.  If any discovery relates to Desktop Metal, it will necessarily affect only former officers and directors.

To overcome this defect, Defendants assert (Dkt. 1 ¶ 16) that all such discovery will require approval by "the Bankruptcy Court in light of the automatic stay imposed by section 362 of the Bankruptcy Code."  Not so.  Courts uniformly hold that the Bankruptcy Code's automatic stay bars *litigation* against the debtor, not discovery for use against third parties.  *See, e.g.*, *In re Miller*, 262 B.R. 499, 505 (B.A.P. 9th Cir. 2001).  "[T]he fact that an automatic stay is in place does not

shield a debtor from responding to discovery requests to the extent that those requests pertain only to a plaintiff's claims against non-debtor defendants." *Blue Cross of Cal. v. Sonoma W. Med. Ctr., Inc.*, 2019 WL 926329, at *8 (C.D. Cal. Feb. 7, 2019). As noted above, discovery cannot affect Desktop Metal's officers and directors because Desktop Metal will no longer exist in a few weeks.

In any case, Defendants overstate the discovery required from Desktop Metal. Quinn Emanuel alleges that Defendants caused Desktop Metal to undertake its tortious conduct, and so nearly all the discovery required should come from Defendants themselves. *See* SAC ¶¶ 68-77. Former Desktop Metal officers and directors will also supply much of the requisite information, given that Desktop Metal is liquidating. Defendants' warnings about purported discovery required from a soon-to-be-liquidated entity are too "conclusory" to carry weight. *See Fratelli Cosulich Unipessoal, S.A. v. Specialty Fuels Bunkering, LLC*, 2014 WL 2611547, at *10 (S.D. Ala. June 11, 2014) (rejecting similar conclusory arguments that the bankruptcy stay barred discovery).

### C.    Mr. Baharav's Hypothetical Indemnification Will Not Affect The Bankruptcy Estate

Defendants' claim (Dkt. 1 ¶ 17) that this case is "related to" the bankruptcy because "Mr. Baharav is entitled to indemnification from the Debtor under the applicable bylaws of the Debtor" is equally baseless. Defendants have provided no evidence that Mr. Baharav is entitled to indemnification at all or whether any such purported indemnification would apply here, especially when, as here, Mr. Baharav acted in Nano's interest, not in Desktop Metal's. SAC ¶¶ 68-77. And "'[e]ven with an indemnification agreement, a court lacks 'related to' jurisdiction if the non-debtor's recovery is predicated upon the results of a subsequent action for indemnification. When indemnification is not automatic, 'related to' jurisdiction does not exist.'" *Bibeault v. CVS Pharmacy, Inc.*, 2019 WL 3546889, at *3 (D. Mass. June 21, 2019) (quoting *In re W.R. Grace & Co.*, 412 B.R. 657, 667 (D. Del. 2009)); *see, e.g.*, *Honor v. Johnson & Johnson*, 2019 WL 2521641,

at \*2 (D. Mass. June 19, 2019) (defendant could not establish jurisdiction on the basis of possible

non-party indemnification because indemnification required litigation and was not automatic); *T*

*& K Asphalt*, 976 F. Supp. 2d at 42 ("the possibility that Third–Party Defendants *may* have claims

for indemnity" does not suffice) (emphasis in original); *In re VideOcart, Inc.,* 165 B.R. 740, 744

(Bankr. D. Mass. 1994) (possible contribution claims by the defendant against the debtor are "too

tenuous and speculative" to confer jurisdiction).  *In re New England Compounding Pharmacy, Inc.*

*Prods. Liab. Litig.*, 496 B.R. 256 (D. Mass. 2013) (cited in Dkt. 1 ¶ 17), by contrast, involved an

undisputedly automatic indemnity obligation.  *Id.* at 264.

Finally, even if Mr. Baharav had an automatic right to indemnity, Defendants do not and

cannot contend that Nano does.  Claims against Nano, as a result, would not be subject to "related

to" jurisdiction under this ground, and so such claims would have to be remanded to Massachusetts

Superior Court regardless.

### D.    Quinn Emanuel's Claims Do Not Belong To The Bankruptcy Estate

Defendants' last argument (Dkt. 1 ¶ 18) that Quinn Emanuel "improperly seek[s] to usurp

claims that belong exclusively to the Debtor's estate"—including "allegations of fraudulent

conveyance, asset-stripping, and alter ego theories"—is equally baseless.  The operative complaint

does not allege "asset-stripping," "fraudulent conveyance," or an "alter ego theor[y]."  *See, e.g.*,

*Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025) ("When a plaintiff amends her

complaint following her suit's removal, a federal court's jurisdiction depends on what the new

complaint says," and if the plaintiff eliminates the claims that provided jurisdiction for removal,

"the court's power to decide the dispute dissolves").

In any case, passing references to asset-stripping in Quinn Emanuel's prior complaints to

establish Defendants' wrongful conduct for purposes of a tortious interference claim would not

establish "related to" jurisdiction either.  Unlike in *In re Am. Cartage, Inc.*, 656 F.3d 82 (1st Cir.

2011) (cited in Dkt. 1 ¶ 18), Quinn Emanuel's "harm alleged" is not "derivative" of the harm to Desktop Metal. *Id.* at 90. The alleged harm here is nonpayment of Quinn Emanuel's bills, *see* SAC ¶ 100, not harm to Desktop Metal. *Compare Fin. Oversight & Mgmt. Bd. for P.R. v. Est. of Serrano*, 102 F.4th 527, 531 (1st Cir. 2024) (plaintiffs brought claims against UBS on behalf of the debtor). Nor would an alter ego theory of liability for Desktop Metal's liabilities belong to the bankruptcy estate. *See, e.g.*, *In re Curtina Int'l*, 15 B.R. 993, 995 (Bankr. S.D.N.Y 1981) ("Unlike the trustee, [the plaintiff] does not seek to recover assets for the benefit of the estate; [the plaintiff] desires to collect for itself monies allegedly owed to it by the nondebtor defendants as the alter egos of the debtor"). The claims belong to Quinn Emanuel because "[a]ny recovery thereon would go to [Quinn Emanuel] alone." *Surprise*, 443 B.R. at 262.

## II.    EVEN IF THIS COURT HAS SUBJECT-MATTER JURISDICTION, IT SHOULD STILL REMAND

Even if this Court did have subject-matter jurisdiction, it should still remand this case to Superior Court as a matter of either mandatory or permissive abstention.

### A.    This Court Should Remand As A Matter Of Mandatory Abstention

28 U.S.C. § 1334(c)(2) provides that for any case that is subject to "related to" bankruptcy jurisdiction, "the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." This statute is "mandatory": "'[A] court *must* abstain from hearing a case before it if the following criteria are met: (1) a timely motion to abstain is filed; (2) the proceeding is based on a state law cause of action; (3) the action does not arise under Title 11 but is merely related to a case under Title 11; (4) the action could not have been commenced in federal court absent jurisdiction under 28 U.S.C.A. § 1334; (5) a state court action has commenced; and (6) can be timely adjudicated.'"

*Cambridge Place*, 2010 WL 6580503, at *6 (emphasis added) (quoting *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 92 (D.P.R. 2007)).

All of these factors decisively favor abstention.

*First*, Quinn Emanuel timely filed this motion within 30 days of removal.  *See, e.g.*, *In re Punto Aparte/Cima Publicidad, Inc.*, 2009 WL 249429, at *3 (Bankr. D.P.R. Jan. 30, 2009) ("A motion for abstention filed a little over a month after the removal is timely").

*Second*, Quinn Emanuel's claims all arise under state law.  SAC ¶¶ 85-107; *see Borintex Mfg. Corp. v. Banco Gubernamental de Fomento Para P.R.*, 102 B.R. 8, 9 (D.P.R. 1989) (mandatory abstention was warranted because the case involved "purely state-law issues").

*Third*, as noted above, this action does not "arise in" or "arise under" title 11; the only possible jurisdictional hook is "related to" jurisdiction.  *Supra*, pp. 8-9.

*Fourth*, there is no other basis for subject-matter jurisdiction.  Quinn Emanuel does not bring federal-law claims so there is no federal-question jurisdiction, and Quinn Emanuel and Defendants are all citizens of foreign states, so there is no diversity jurisdiction either.  SAC ¶¶ 13-14; *see, e.g.*, *Auctus Fund, LLC v. Drone Guarder, Inc.*, 588 F. Supp. 3d 177, 184 (D. Mass. 2022) (no diversity when an alien appears on both sides with a domestic party on only one side).

*Fifth*, Quinn Emanuel originally commenced this action in state court.  Dkt. 1-3.  Although the case has now been removed to federal court, mandatory abstention applies to removed actions. *See Cambridge Place*, 2010 WL 6580503, at *6 (collecting authorities).  "To conclude otherwise would mean that abstention would never apply to cases which were removed from state court." *Id*.  That is not what Congress intended.  *See id.*

*Sixth*, this action can be timely litigated in Massachusetts Superior Court.  Before it was removed, this case was accepted into the Business Litigation Section, which operates "under Time

Standards Orders for each case and sets firm trial dates." *See Cambridge Place*, 2010 WL 6580503, at \*7 (an action could be timely litigated for this reason). Adjudication will be far faster than in bankruptcy court, in fact, because a "state common law" action that is "related only peripherally to the bankruptcy itself[] cannot be subject to final adjudication by the Bankruptcy Court." *C & A*, 369 B.R. at 94 (citation omitted). "At most, the bankruptcy judge may submit proposed findings of facts and conclusions of law to the District Court for review." *Id.* (citation omitted). This process is inefficient compared to litigation in the state court, especially given that this case is "in the initial pleading stage[]." *In re Candelero Sand & Gravel, Inc.*, 66 B.R. 903, 908 (D.P.R. 1986).

### B. This Court Should Remand As A Matter Of Permissive Abstention

Even if mandatory abstention did not apply, this Court should remand under 28 U.S.C. §§ 1334(c)(1) and 1452(b). These statutes permit a court to "remand [a] claim or cause of action on any equitable ground." *Cambridge Place*, 2010 WL 6580503, at \*7 (quoting *Santa Clara*, 223 B.R. at 44). Such permissive remand hinges on the consideration of seven factors: "(1) the effect of the action on the administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness or remoteness of the action to the bankruptcy case; (6) the existence of a right to a jury trial; and (7) prejudice to the party involuntarily removed from state court." *Cambridge Place*, 2010 WL 6580503, at \*7 (citation omitted). These factors support removal.

*First*, as discussed earlier, this action will not affect the administration of the bankruptcy estate. *Supra*, Part I. At best, any purported effect on the bankruptcy proceeding "hinges on several contingencies," which weighs in favor of abstention. *In re Hous. Reg'l Sports Network, L.P.*, 514 B.R. 211, 215 (Bankr. S.D. Tex. 2014).

*Second*, again, Quinn Emanuel's claims all arise under state law. SAC ¶¶ 85-107; *see, e.g.*, *Bibeault*, 2019 WL 3546889, at *4 (recommending remand for "an exclusively state law action"); *In re C & A, S.E.,* 360 B.R. 12, 19 (Bankr. D.P.R. 2006) (remanding because "all of the issues involve only local law").

*Third*, although Quinn Emanuel's state-law claims are straightforward, that does not weigh heavily in favor of retaining jurisdiction. *See O'Riorden v. Johnson & Johnson*, 2019 WL 2371782, at *2 (D. Mass. June 5, 2019) ("although the state law to be applied in this action is only of moderate difficulty, 'comity counsels in favor of state-court resolution of state-law claims'") (citation omitted).

*Fourth*, "comity counsels in favor of state-court resolution of state-law claims." *Fed. Home Loan Bank of Bos. v. Ally Fin., Inc.,* 2012 WL 769731, at *4 (D. Mass. Mar. 9, 2012); *see, e.g.*, *Cambridge Place*, 2010 WL 6580503, at *8 ("federal courts should not rush to usurp the traditional precincts of the state courts") (citation omitted).

*Fifth*, as discussed *supra*, Part I, this case has no real connection to the bankruptcy case.

*Sixth*, Quinn Emanuel has demanded a jury trial. *See* SAC at 22. When the plaintiff demands a jury trial and the proceeding has a minimal relationship to a bankruptcy case, that is "a sufficient ground for an equitable remand." *Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 409 (S.D.N.Y. 1991).

*Seventh*, Quinn Emanuel will be prejudiced by the removal. Defendants have made clear that they are immediately seeking to transfer this action to the Bankruptcy Proceeding in Texas. *See* Dkt. 1 ¶ 6. "[W]here jurisdiction [] is based on the bankruptcy proceeding" such that the case would likely be transferred, and "none of the claims against [the Defendants] arise in or are related to cases under title 11, denying an equitable remand would 'prejudice' [the plaintiff]." *Corbin v.*

*Salkovitz*, 2024 WL 4652481, at *11(D. Mass. Nov. 1, 2024).  And "given the lack of ties to a bankruptcy proceeding," there is strong reason to believe that "the removal of this case to district court was simply forum shopping."  *Cambridge Place*, 2010 WL 6580503, at *9 ("[t]he plaintiff's decision to commence suit in state court based on state law should be honored").

## <u>CONCLUSION</u>

This Court should remand this action to Massachusetts Superior Court.

Dated:  August 28, 2025               Respectfully submitted,

                                      /s/ *William D. Weinreb*
                                      William D. Weinreb (BBO #557826)
                                      Alex H. Loomis (BBO #699129)
                                      QUINN EMANUEL URQUHART
                                        & SULLIVAN LLP
                                      111 Huntington Avenue, Suite 520
                                      Boston, MA 02199
                                      Tel: (617) 712-7100
                                      billweinreb@quinnemanuel.com
                                      alexloomis@quinnemanuel.com

                                      Kevin S. Reed, Esq. (*pro hac vice* pending)
                                      QUINN EMANUEL URQUHART
                                        & SULLIVAN LLP
                                      295 Fifth Avenue, 9th Floor
                                      New York, NY 10016
                                      Tel: (212) 849-7000
                                      kevinreed@quinnemanuel.com

                                      Patricia B. Tomasco, Esq. (*pro hac vice* pending)
                                      QUINN EMANUEL URQUHART
                                        & SULLIVAN LLP
                                      700 Louisiana St., Suite 3900
                                      Houston, TX 77002
                                      Tel: (713) 221-7000
                                      pattytomasco@quinnemanuel.com

                                      *Attorneys for Plaintiff,*
                                      *Quinn Emanuel Urquhart & Sullivan LLP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was filed on August 28, 2025 through the ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


Dated: August 28, 2025                              /s/ *William D. Weinreb*

                                                    William D. Weinreb