## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN, LLP,<br><br>Plaintiff,<br><br>v.<br><br>NANO DIMENSION LTD. and OFIR BAHARAV,<br><br>Defendants. | Civil Action No.:  1:25-cv-12159-BEM<br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION. ................................................................................................ 1

II.   FACTUAL BACKGROUND. ............................................................................. 3

    A. Quinn Represented An Insolvent Company And Cannot Collect $30 Million. .............. 3

    B. Quinn Brought This Action Against Nano Dimension Ltd. And Ofir Baharav. ............. 5

III.  ARGUMENT. ...................................................................................................... 6

    A. Quinn Has No Attorney's Lien "Claim." ...................................................... 6

        1.    There Is No Attorney's Lien Because Desktop Recovered No Money. ................................................................. 7

        2.    Quinn Waived Any Attorney's Lien By Failing To Enforce It. .................. 9

    B. Quinn Does Not State A Viable Tortious Interference Claim. ...................................... 11

        1.    Quinn Does Not Sufficiently Plead Causation. ......................................... 11

        2.    Quinn Does Not Sufficiently Plead Improper Motive Or Means. ............ 13

            a.    No Actual Malice. ......................................................... 13

            b.    No Improper Means. ..................................................... 16

    C. Quinn's Chapter 93A Claim Is Legally Defective. ....................................... 17

        1.    The Chapter 93A Claim Fails As Duplicative Of Quinn's Other Claims. ................................................................. 18

        2.    Quinn Did Not Plead A Jurisdictional Nexus To Massachusetts. ............. 18

        3.    Quinn Did Not Plead A Commercial Relationship. .................................. 20

IV.   CONCLUSION. ................................................................................................. 20

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aggregate Indus. – N.E. Region, Inc. v. Hugo Key & Sons, Inc.*,
    90 Mass. App. Ct. 146 (2016)...................................................................20

*AngioDynamics, Inc. v. Biolitec, Inc.*,
    2011 U.S. Dist. LEXIS 80734 (D. Mass. July 25, 2011).........................13

*Armstrong v. White Winston Select Asset Funds, LLC*,
    648 F. Supp. 3d 230 (D. Mass. 2022) ......................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................6, 12

*Banque Indosuez v. Sopwith Holdings Corp.*,
    98 N.Y.2d 34 (2002) ..............................................................................7

*Bassichis v. Flores*,
    490 Mass. 143 (2022) ...........................................................................17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................6, 16

*Blackstone v. Cashman*,
    448 Mass. 255 (2007) ...........................................................................13

*Charles River Data Sys., Inc. v. Oracle Complex Sys. Corp.*,
    788 F. Supp. 54 (D. Mass. 1991) ..........................................................2, 14

*Conformis, Inc. v. Aetna, Inc.*,
    58 F.4th 517 (1st Cir. 2023)..................................................................16

*CrunchTime! Info. Sys. v. Frischs Rests., Inc.*,
    768 F. Supp. 3d 183 (D. Mass. 2025) ....................................................19

*In re Desktop Metal, Inc.*,
    No. 25-90268 (Bankr. S.D. Tex.).....................................................1, 3, 19

*Desktop Metal, Inc. v. Nano Dimension Ltd.*,
    No. 2024-1303-KSJM, 2025 Del. Ch. LEXIS 78 (Del. Ch. Mar. 24, 2025) ..............4, 7, 8, 10

*Diva's Inc. v. City of Bangor*,
    411 F.3d 30 (1st Cir. 2005).....................................................................3

*Doe v. Nutter, McClennen & Fish*,
    41 Mass. App. Ct. 137 (1996) .................................................................................17

*Eaton Vance Senior Income Trust v. Saba Cap. Master Fund, Ltd.*,
    2021 Mass. Super. LEXIS 48 (Mar. 31, 2021) ........................................................15

*Ekelman v. Marano*,
    251 N.Y. 173 (1929) ..................................................................................................8

*Eri/Integral Holdings LLC v. Integral Fund I Inv., LLC*,
    2024 Mass. Super. LEXIS 63 (May 31, 2024) ........................................................18

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
    121 F.4th 280 (1st Cir. 2024)...................................................................................15

*Fontana v. Republic of Argentina*,
    2021 U.S. Dist. LEXIS 188542 (S.D.N.Y. Sept. 30, 2021).......................................9

*In re Glasshouse Techs.*,
    604 B.R. 600 (Bankr. D. Mass. 2019) .....................................................................20

*Harley & Browne v. United States*,
    957 F. Supp. 44 (S.D.N.Y. 1997)............................................................................10

*HC&D, LLC v. Precision NDT & Consulting LLC*,
    2024 U.S. Dist. LEXIS 197069 (D. Mass. Oct. 30, 2024).......................................19

*Hellerstein v. Hellerstein*,
    305 A.D.2d 211 (1st Dep't 2003) ............................................................................10

*Impact Tech. Licensing, LLC v. Barry-Wehmiller Co., Inc.*,
    2025 Mass. Super. LEXIS 39 (Mar. 7, 2025) .........................................................16

*Ironshore Specialty Ins. Co. v. United States*,
    871 F.3d 131 (1st Cir. 2017).....................................................................................3

*Kaplan v. Reuss*,
    113 A.D.2d 184 (2d Dep't 1985) .........................................................................9, 10

*King v. Driscoll*,
    418 Mass. 576 (1994) .........................................................................................13, 14

*Kuwaiti Danish Comput. Co. v. Digital Equip. Corp.*,
    438 Mass. 459 (2003) .........................................................................................18, 19

*Liberty Mut. Ins. Co. v. Thurber*,
    2022 U.S. Dist. LEXIS 108192 (D. Mass. June 17, 2022) ......................................20

*Milliken & Co. v. Duro Textiles, LLC,*
   451 Mass. 547 (2008) .................................................................................20

*Mullins v. Corcoran,*
   488 Mass. 275 (2021) .................................................................................13

*N'Tapalis v. Bickford,*
   2013 Mass. Super. LEXIS 8 (Jan. 11, 2013) ...................................14, 15

*Nat'l Econ. Rsch. Assocs. v. Evans,*
   2008 Mass. Super LEXIS 294 (Sept. 9, 2008).........................................11

*Natole v. Natole,*
   295 A.D.2d 706 (3d Dep't 2002) ................................................................7

*O'Keefe v. Landow,*
   289 F.2d 465 (2d Cir. 1961)........................................................................8

*Otis v. Arbella Mut. Ins. Co.,*
   443 Mass. 634 (2005) ...........................................................................12, 13

*Pan Am. World Airways v. Care Travel Co. (In re Pan Am Corp.),*
   166 B.R. 538 (S.D.N.Y. 1994).....................................................................8

*PayPal, Inc. v. NantHealth, Inc.,*
   2019 Mass. Super. LEXIS 58 (Apr. 16, 2019)..........................................15

*Pembroke Country Club, Inc. v. Regency Sav. Bank,*
   62 Mass. App. Ct. 34 (2004)................................................................15, 18

*Powderly v. MetraByte Corp.,*
   866 F. Supp. 39 (D. Mass. 1994) .......................................................2, 14, 15

*Psy-Ed Corp. v. Klein,*
   459 Mass. 697 (2011) ...........................................................................11, 13

*Quinn Emanuel Urquhart & Sullivan, LLP v. Desktop Metal, Inc.,*
   No. 652274/2025 (N.Y. Sup. Ct.) .....................................................5, 7, 13

*Quinn Emanuel Urquhart & Sullivan, LLP v. Nano Dimension Ltd.,*
   No. 2584CV01885-BLS1 (Mass. Super. Ct.) .............................................5

*Rafferty v. Merck & Co.,*
   479 Mass. 141 (2018) .................................................................................20

*Rosenman & Colin v. Richard,*
   850 F.2d 57 (2d Cir. 1988)..........................................................................8

*Santander Bank, N.A. v. Warrender*,
760 F.3d 130 (1st Cir. 2014) ........................................................................8

*Schatz v. Republican State Leadership Comm.*,
669 F.3d 50 (1st Cir. 2012) ...........................................................................3

*In re Schick*,
215 B.R. 13 (Bankr. S.D.N.Y. 1997) ............................................................8

*Schlumberger Tech. Corp. v. Are-Ma Region No. 103, LLC*,
2024 Mass. Super. LEXIS 40 (Apr. 8, 2024) ...............................................18

*Skyhook Wireless, Inc. v. Google, Inc.*,
86 Mass. App. Ct. 611 (2014) .....................................................................17

*Speakman v. Allmerica Fin. Life Ins. & Annuity Co.*,
367 F. Supp. 2d 122 (D. Mass. 2005) ..........................................................18

*In re Stream TV Networks Omnibus Agreement Litig.*,
283 A.3d 1183 (Del. Ch. 2022) .....................................................................9

*United Truck Leasing Corp. v. Geltman*,
406 Mass. 811 (1990) ............................................................................13, 15

*Warren Envtl., Inc., v. Source One Envtl., Ltd.*,
2020 U.S. Dist. LEXIS 72529 (D. Mass. Apr. 24, 2020) ...........................14

*Weiler v. PortfolioScope, Inc.*,
469 Mass. 75 (2014) ...................................................................................11

## Statutes

11 U.S.C. § 547(b) ...........................................................................................15

M.G.L. c. 93A, § 2(a) ......................................................................................17

M.G.L. c. 93A, § 11 ................................................................................. *passim*

M.G.L. c. 221, § 50 ............................................................................................6

N.Y. Jud. Law § 475 ..........................................................................1, 6, 7, 17

## Other Authorities

Fed. R. Civ. P. 12(b)(6) ...................................................................................16

## I.    INTRODUCTION.

This is a case against the wrong parties.

Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn") alleges that it is owed $30 million by its former client, Desktop Metal, Inc. ("Desktop"), which is not a party here.  Quinn represented Desktop in a lawsuit in the Delaware Court of Chancery against Desktop's corporate parent, Nano Dimension Ltd. ("Nano").  Desktop, however, is insolvent and recently filed for bankruptcy.  *See In re Desktop Metal, Inc.*, No. 25-90268 (Bankr. S.D. Tex.).

So, through this action, Quinn seeks payment from an alternative set of pockets, neither of whom were ever Quinn's client or guaranteed payment of Quinn's fees.  In July, Quinn sued Nano and its then-CEO, Ofir Baharav (collectively, "Defendants"), raising claims of tortious interference with a contract and unfair trade practices under M.G.L. c. 93A, § 11.  Quinn later added an attorney's lien "claim."  In essence, Quinn seeks to hold Desktop's corporate parent and the parent's former CEO liable for Desktop's own alleged breach of contract.  This lawsuit is an end run around the corporate form.  The only party responsible for paying Quinn's fees is Desktop, and Quinn already is seeking recovery from Desktop in its bankruptcy case.

For the reasons that follow, the Court should dismiss each of Quinn's three claims.  First, Quinn's attorney's lien "claim" under N.Y. Jud. Law § 475 is legally defective.  Quinn never had an attorney's lien because its work for Desktop did not result in any proceeds for Desktop.  Instead, the Delaware court ordered specific performance of a merger agreement that called for Nano to pay Desktop's shareholders—*not* Desktop.  And even if Quinn had a lien, Quinn waived it by failing to timely assert the lien in multiple proceedings in Delaware and New York state courts where Quinn pursued payment.  Indeed, Quinn specifically sought from the Delaware Court of Chancery an order requiring that Nano pay its fees, which that court denied.  Now Quinn invents

a new theory that it had a lien on the merger consideration, despite never mentioning that supposed lien to the Delaware court from which Quinn sought—and failed to obtain—fee-shifting.

Second, Quinn's tortious interference claim similarly fails for two independent reasons. Quinn alleges no facts plausibly suggesting that Defendants caused Desktop's alleged breach of contract. Instead, the Second Amended Complaint vividly recounts Desktop's longstanding financial distress. Quinn alleges that Desktop consulted with counsel about a bankruptcy filing months before the Nano merger, after which Quinn sent Desktop a $30 million legal bill. Quinn also admits that it sought relief from the Delaware Court of Chancery (which was denied) so that Desktop could *borrow* money to pay Quinn. On these facts, the only plausible inference is that Desktop could not afford to pay Quinn—not that Defendants acted tortiously.

Quinn's tortious interference claim also fails because Quinn did not plead that Defendants caused Desktop's alleged breach through *either* improper motive *or* improper means. Under Massachusetts law, when a parent corporation "'act[s] with the purpose of protecting [its] own legitimate economic interests, and without actual malice directed toward the plaintiff,'" the parent "'is privileged to 'interfere' with the contractual business of its subsidiary.'" *See Powderly v. MetraByte Corp.*, 866 F. Supp. 39, 43 (D. Mass. 1994) (quoting *Charles River Data Sys., Inc. v. Oracle Complex Sys. Corp.*, 788 F. Supp. 54, 59 (D. Mass. 1991) (alterations in original)). Here, because Defendants are Desktop's parent corporation and its former CEO—a former Desktop board member—Quinn must sufficiently plead that Defendants acted with actual malice. Quinn cannot do so. Nor has Quinn alleged the types of improper means—such as fraud, misrepresentation, defamation, or other violation of statutory or common law—that are necessary to plead its claim.

Finally, Quinn's claim under M.G.L. c. 93A, § 11 should also be dismissed, for three

reasons.  First, Quinn's Chapter 93A claim is wholly duplicative of its attorney's lien and tortious interference claims and should be dismissed for the same reasons.  Second, Quinn does not plead a jurisdictional nexus between its claims and Massachusetts sufficient to warrant application of Chapter 93A.  Third, Quinn fails to allege a commercial relationship between Quinn and Nano, which is an essential element of a Section 11 claim.

## II.    FACTUAL BACKGROUND.

At this stage, the Court takes the Second Amended Complaint's non-conclusory factual allegations as true to determine whether those allegations state a plausible claim for relief. *Ironshore Specialty Ins. Co. v. United States*, 871 F.3d 131, 135 (1st Cir. 2017).  The Court also may consider a document of undisputed authenticity, such as a contract, if Quinn's allegations are linked to and depend on that document, *see Diva's Inc. v. City of Bangor*, 411 F.3d 30, 38 (1st Cir. 2005) (collecting cases), and "facts susceptible to judicial notice," *Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 55-56 (1st Cir. 2012) (quotation marks omitted).

### A.    <u>Quinn Represented An Insolvent Company And Cannot Collect $30 Million.</u>

Quinn is a law firm.  Second Am. Compl. ¶ 10 (ECF No. 13).  Desktop and Nano are 3D printing companies.  *Id.* ¶¶ 16-19.  Mr. Baharav is Nano's former CEO and became Chairman of Desktop's board of directors after Nano acquired Desktop, but he later resigned from its board. *Id.* ¶¶ 12, 68.[1]

In January 2025, Quinn and Desktop signed an engagement letter (the "Engagement Letter") for Delaware litigation against Nano to compel specific performance of a merger

---

[1]    Although not the basis of this motion to dismiss, Desktop filed a first-day declaration in the bankruptcy case that states that Mr. Baharav resigned from its board on or about May 14, 2025.  *In re Desktop Metal, Inc.*, No. 25-90268, Decl. of Andrew Hinkelman ¶ 26 (Bankr. S.D. Tex. July 28, 2025) (ECF No. 16).  Since then, Desktop's board has been comprised entirely of independent directors.  *Id.* ¶¶ 25-27. For more than two months, those independent directors oversaw Desktop's decisions to file for bankruptcy and not to pay Quinn.  *See id.*  Quinn should know these facts from its participation in the bankruptcy case.

agreement between Nano and Desktop. *Id.* ¶¶ 30, 36. Desktop "needed the [Nano] deal to close" and "unless the closing went forward, it risked bankruptcy." *Id.* ¶ 34. At that time, Desktop was in "a dire financial situation" and "rapidly burning through its remaining cash." *Id.* ¶ 2. It had a litany of problems: "accounts with high balances," "long payment terms," "problematic inventory statuses," and "slow-moving inventory." *Id.* ¶ 22. Quinn accordingly "offered Desktop Metal an extremely generous deal and shouldered much of the risk in the case itself." *Id.* ¶ 37. Quinn employed a bespoke rate structure: Desktop would be invoiced at 50% of Quinn's hourly rates if it lost the case but would pay 120% of Quinn's hourly rates if Desktop prevailed. *Id.* ¶ 38.

The Engagement Letter also stated that Quinn intended to bill Desktop monthly and required that all bills be paid within 30 days. *Id.* ¶¶ 40-41. Notwithstanding the Engagement Letter's terms, Quinn never sent Desktop invoices until the case ended, and Desktop did not pay Quinn any money before then. *See id.* ¶¶ 40-41. On March 24, 2025, the Delaware court issued a post-trial opinion, which concluded that Nano breached its merger agreement with Desktop and ordered Nano to consummate the transaction pursuant to the terms of the merger agreement. *Id.* ¶ 47; *Desktop Metal, Inc. v. Nano Dimension Ltd.*, No. 2024-1303-KSJM, 2025 Del. Ch. LEXIS 78 (Del. Ch. Mar. 24, 2025).

Quinn's total bill for the two-and-a-half-month engagement and two-day trial was approximately $30 million. *See* Second Am. Compl. ¶¶ 1, 57. Days before closing, on March 26, 2025, Quinn tried to recover its fees before the Delaware Court of Chancery by moving to vacate a provision in the Nano-Desktop merger agreement, which prohibited Desktop from taking on additional liabilities, so that Desktop could borrow money to pay Quinn. *Id.* ¶ 51. Quinn also asked for an order that Nano pay Quinn's fees. *Id.* The Delaware court denied both of Quinn's requests. *Id.* Despite now claiming that "Nano was required to pay Quinn Emanuel's reasonable

fees and costs covered by the attorney lien before paying the Desktop Metal shareholders," *id.* ¶ 89, Quinn never mentioned this incredible claim to Nano or to the Delaware court that ordered specific performance, including when Quinn sought from that court an order requiring Nano to pay its fees.

On April 2, 2025, the merger closed, and Desktop became a wholly owned subsidiary of Nano.  *Id.* ¶ 49.  On April 10, 2025, Quinn demanded arbitration against Desktop (but not Defendants) to recover its unpaid $30 million bill.  *Id.* ¶ 57.  The next day, Quinn petitioned the New York Supreme Court for attachment of Desktop's assets in aid of arbitration.  *Id.* ¶ 58.  That court denied Quinn's request because the bills were not yet due.  *Id.*  Quinn appealed and filed another attachment petition against Desktop, which was dismissed on June 30, 2025.  *Quinn Emanuel Urquhart & Sullivan, LLP v. Desktop Metal, Inc.*, No. 652274/2025, NYSCEF Doc. Nos. 50, 57 (N.Y. Sup. Ct.).  On July 3, 2025, Quinn filed a third attachment petition.  *Quinn Emanuel*, No. 652274/2025, NYSCEF Doc. No. 53.  It argued that Desktop "is either insolvent or imminently facing insolvency" and that "actual or impending insolvency establishes a need for attachment." *Quinn Emanuel*, No. 652274/2025, NYSCEF Doc. No. 55 at 2, 16.  The New York Supreme Court granted that petition on July 21, 2025.  *Quinn Emanuel*, No. 652274/2025, NYSCEF Doc. No. 71.

### B. <u>Quinn Brought This Action Against Nano Dimension Ltd. And Ofir Baharav.</u>

On July 8, 2025, Quinn filed this Action in Suffolk County Superior Court, raising claims of tortious interference and violations of M.G.L. c. 93A against Nano and its former CEO, former Desktop director Ofir Baharav.  *Quinn Emanuel Urquhart & Sullivan, LLP v. Nano Dimension Ltd.*, No. 2584CV01885-BLS1, Compl. (Mass. Super. Ct. July 8, 2025) (ECF No. 1).  Quinn filed the Amended Complaint on July 23, 2025.  *Id.*, Am. Compl. (ECF No. 6).  Defendants removed the Action on August 1, 2025 as related to Desktop's bankruptcy case.  Not. of Removal (ECF No.

1).

After removal, Quinn amended its complaint again to add an attorney's lien count. Second Am. Compl. ¶¶ 85-91. Overall, Quinn claims that Defendants "are using their power over Desktop Metal to direct it not to pay Quinn Emanuel's bills." *Id.* ¶ 68. The factual allegations underlying this sweeping assertion are: (i) Mr. Baharav stated on an investor call that Desktop is independent from Nano; (ii) Mr. Baharav stated that Nano is applying a "disciplined investment approach" to Desktop; (iii) Defendants frustrated an attorney's lien on the Delaware judgment proceeds (the merger consideration that Nano paid to Desktop's shareholders under the merger agreement) by failing to pay Quinn before executing the judgment; and (iv) Defendants rushed Desktop into bankruptcy to undermine Quinn's attachment. *See id.* ¶¶ 53, 72, 74, 76, 85-91, 98.

## III.    ARGUMENT.

A complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleading facts "merely consistent with" a defendant's liability is insufficient. *Twombly*, 550 U.S. at 557. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then the complaint should be dismissed. *Iqbal*, 556 U.S. at 679. As shown below, the Second Amended Complaint fails to state a plausible claim.

### A.    Quinn Has No Attorney's Lien "Claim."

Quinn asserts an attorney's lien "claim" under N.Y. Jud. Law § 475 or, alternatively, M.G.L. c. 221, § 50. Second Am. Compl. ¶ 86. Quinn contends that a lien "attached to the payments that Nano was ordered to make under the terms of the Merger Agreement" and Defendants "violat[ed]" the lien by executing the Delaware judgment without paying Quinn's fees

first. *Id.* ¶¶ 87-91.  The claim fails for two independent reasons.  One, no lien ever existed.  Two, Quinn plainly waived any lien by failing to assert it for roughly five months, during which time Quinn litigated (and lost) a fee-shifting request and acquiesced to Nano's transfer of $183 million in merger consideration allegedly subject to the lien.

### 1.    There Is No Attorney's Lien Because Desktop Recovered No Money.

Section 475 limits attorney's lien rights "to outcomes where 'proceeds' have been obtained 'in [a] client's favor.'"  *Banque Indosuez v. Sopwith Holdings Corp.*, 98 N.Y.2d 34, 43 (2002) (quoting N.Y. Jud. Law § 475).  "[E]ntry of judgment on behalf of a client" is insufficient to establish an attorney's lien; "there must be proceeds . . . upon which the lien can affix."  *Id.* at 44. Specifically, an attorney's lien is limited to funds *the client* is entitled to recover.  *See Natole v. Natole*, 295 A.D.2d 706, 709 (3d Dep't 2002) ("the law firm . . . recovered no proceeds for defendant as a result of the matrimonial action, so there is nothing to which the lien may attach").[2]

Applying this rule, Quinn never had an attorney's lien, because Desktop received no proceeds from the Delaware case.  Desktop sought specific performance and did not seek—let alone obtain—any damages award.  Indeed, paragraph one of Desktop's operative complaint in the Delaware case, which Quinn wrote, says: "This is an action for specific performance."  *Desktop Metal, Inc. v. Nano Dimension Ltd.*, No. 2024-1303-KSJM, Verified Am. Compl. ¶ 1 (Del. Ch. Feb. 11, 2025) (ECF No. 208); *see also id.* ¶¶ 83-116 (demanding no damages).  That is exactly what Desktop got—a judgment ordering Nano to "perform its obligations under the Merger Agreement."  *Desktop Metal, Inc. v. Nano Dimension Ltd.*, No. 2024-1303-KSJM, Order and

---

[2]    After the merger closed, Quinn sent a letter to Desktop and Nano requesting confirmation that its bills would be paid in full.  Second Am. Compl. ¶ 56.  The letter is of undisputed authenticity and subject to judicial notice because Quinn filed it in the New York attachment litigation.  Like the case law cited here, Quinn's letter says its supposed lien attaches only to "any amounts received by Desktop Metal from Nano." *See Quinn Emanuel*, No. 652274/2025, NYSCEF Doc. No. 6.

Partial Final J. ¶ 4 (Del. Ch. Mar. 24, 2025) (ECF No. 445).

Quinn accordingly has no lien because "[a]n attorney who merely defends or protects his client's interest in property without obtaining an affirmative recovery is not entitled to a lien." *See Rosenman & Colin v. Richard*, 850 F.2d 57, 61 (2d Cir. 1988) (collecting cases); *Ekelman v. Marano*, 251 N.Y. 173, 176 (1929) (no attorney's lien where client received "no money or property which she did not possess before the attack [on her title to a house] was made"). The Desktop-Nano merger agreement confirms that no proceeds were recovered by Desktop—indeed, not a single dollar passed to Desktop. The merger agreement required the consideration to be wired from Nano to Nano's paying agent and then to Desktop's shareholders after their surrender of share certificates. *Desktop Metal, Inc. v. Nano Dimension Ltd.*, No. 2024-1303-KSJM, Ex. 1 to Verified Compl. §§ 2.1, 2.2 (Del. Ch. Mar. 24, 2025) (ECF No. 7) (the "Merger Agreement").

Stated differently, the Merger Agreement makes clear that Desktop never received any payment. The merger consideration went directly to Desktop's shareholders. Quinn's lien never attached to those payments, because "[a]n attorney cannot obtain a lien against funds to which his client has no claim." *Pan Am. World Airways v. Care Travel Co. (In re Pan Am Corp.)*, 166 B.R. 538, 544 (S.D.N.Y. 1994) (quoting *O'Keefe v. Landow*, 289 F.2d 465, 466 (2d Cir. 1961)); *see In re Schick*, 215 B.R. 13, 16 (Bankr. S.D.N.Y. 1997) (holding that an attorney "gets no lien in proceeds recovered by another party even if they were created through [their] efforts"); *see also Santander Bank, N.A. v. Warrender*, 760 F.3d 130, 133 (1st Cir. 2014).

Even if Quinn had a lien (and it did not), payment of Quinn's attorney's lien "claim" also would have required Nano to violate a court order that Quinn itself procured. At Quinn's request, the Delaware judgment enjoined Nano from "taking any action inconsistent with its performance obligations under the Merger Agreement that would negatively impact its ability to perform its

obligations under the Merger Agreement." *Compare Desktop Metal, Inc. v. Nano Dimension Ltd.*, No. 2024-1303-KSJM, Verified Am. Compl. ¶ 115 (Del. Ch. Feb. 11, 2025) (ECF No. 208) *with id.*, Order and Partial Final J. ¶ 4 (ECF No. 445). Now, however, Quinn alleges that Nano should have disobeyed its court-ordered obligation by diverting merger consideration to pay Quinn. This theory is a non-starter, because neither Nano nor Desktop properly could have made the payment that Quinn now insists was required. *See, e.g.*, *In re Stream TV Networks Omnibus Agmt. Litig.*, 283 A.3d 1183, 1185-86 (Del. Ch. 2022) (holding parties in contempt because they intentionally transferred stock to a different entity than ordered by court's judgment). In fact, a lien's existence is entirely incompatible with the judgment and would have prevented the merger from closing.

The Court should thus dismiss Quinn's attorney's lien claim because Quinn has no lien.

### 2.    *Quinn Waived Any Attorney's Lien By Failing To Enforce It.*

Even if Quinn had an attorney's lien—and, it never did—Quinn waived it. An attorney's lien is "waived by any action inconsistent with an intent to enforce the lien." *Fontana v. Republic of Argentina,* 2021 U.S. Dist. LEXIS 188542, at *5-6 (S.D.N.Y. Sept. 30, 2021) (quoting *Kaplan v. Reuss*, 113 A.D.2d 184, 187 (2d Dep't 1985)). So, "if the attorney knowingly allows the proceeds to pass into the hands of the client or another party without asserting his or her rights" or "fails to enforce the lien within a reasonable time, the lien will be deemed waived." *Id.*

The Second Amended Complaint confirms that Quinn waived any lien for at least two reasons. First, Quinn never alleges that it tried to enforce the lien before the merger closed, despite (1) knowing that the judgment imminently required $183 million to pass from Nano to Desktop's shareholders and (2) being "concerned" that Defendants would "use their control over Desktop" to "block it from paying Quinn." *See* Second Am. Compl. ¶¶ 23, 50, 89. Moreover, following the Delaware court's judgment ordering specific performance, Quinn negotiated with Nano over

several days the specific per-share merger consideration that would be paid by Nano to Desktop shareholders. *See Desktop Metal, Inc. v. Nano Dimension Ltd.*, No. 2024-1303-KSJM, Letter to C. McCormick at 2-11 (Del. Ch. Mar. 26, 2025) (ECF No. 458) ("C. McCormick Letter"). Quinn does not—and could not—allege that it ever asserted an attorney's lien over those proceeds. Instead, Quinn timidly proffers that Defendants knew about its lien because the Engagement Letter was one of the "tens of thousands" of documents produced during the litigation. Second Am. Compl. ¶¶ 3, 54. However, engaging in routine document production is not an affirmative effort to assert lien rights against merger consideration due—and ordered—to be paid to shareholders.

Second, during follow-on litigation after the Delaware judgment, Quinn did not seek to enforce the lien. In late March 2025—prior to the April 2 closing of the merger—Quinn moved the Delaware Court of Chancery for an order that would have either allowed Desktop to borrow money to pay Quinn or shifted responsibility for Quinn's fees to Nano; however, Quinn did not assert its purported lien against Nano despite seeking payment from Nano. *See* Second Am. Compl. ¶¶ 49-51; C. McCormick Letter. Quinn's effort failed and resulted in a court order concluding that Nano was not liable for Quinn's fees. *See* Second Am. Compl. ¶ 51.

Because Quinn "knowingly allow[ed] the proceeds to pass into the hands of [Desktop's shareholders] without asserting [its] rights," Quinn waived any attorney's lien. *See Kaplan*, 113 A.D.2d at 187 (2d Dep't 1985) (concluding lawyer waived lien by depositing check in client's name and failing to assert the lien until after a separate discovery proceeding concluded); *Harley & Browne v. United States*, 957 F. Supp. 44, 49 (S.D.N.Y. 1997) (law firm waived attorney's lien because it failed to enforce the lien until after settlements proceeds had been distributed); *Hellerstein v. Hellerstein*, 305 A.D.2d 211, 212-13 (1st Dep't 2003) (finding an attorney's eight-month delay in asserting lien on retirement fund subordinated lien to other claims against the fund).

Following the distribution of the merger proceeds, Quinn continued to fail to enforce any lien.  Quinn does not allege that it sought to enforce a lien in the context of the three attachment petitions Quinn initiated against Desktop in New York State.  Second Am. Compl. ¶¶ 5, 58, 66.  In fact, if Quinn had an enforceable lien, it would not have needed to seek attachment.  Tellingly, Quinn's first two complaints in this Action did not mention any lien, much less seek to enforce it.

The Court should dismiss the attorney's lien "claim" because Quinn waived any lien.

### B.    <u>Quinn Does Not State A Viable Tortious Interference Claim.</u>

Under Massachusetts law, "mere inducement of a breach of contract, standing alone, is not enough to establish a tortious interference claim."  *Nat'l Econ. Rsch. Assocs. v. Evans*, 2008 Mass. Super LEXIS 294, at *30 (Sept. 9, 2008).[3]  The plaintiff must allege four elements: (i) the plaintiff had a contract with a third party; (ii) the defendant knowingly caused the third party to breach the contract; (iii) the defendant acted with an improper motive or used improper means when interfering with the contract; and (iv) the defendant's actions caused the plaintiff to suffer harm. *Weiler v. PortfolioScope, Inc.*, 469 Mass. 75, 84 (2014); *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 715-16 (2011).  Quinn fails to establish both the second element (causation) and the third element (improper motive or means).

#### 1.    *Quinn Does Not Sufficiently Plead Causation.*

To begin, the Second Amended Complaint does not permit a reasonable inference that Nano or Mr. Baharav caused Desktop to breach the Engagement Letter.  Stating the obvious, neither Nano nor Mr. Baharav could cause Desktop to do anything prior to the merger, because they had no control over Desktop.  The Second Amended Complaint also fails to identify any specific actions that Nano or Mr. Baharav took after the merger to deny payment to Quinn.  The

---

[3]     Defendants understand that Quinn asserts its tortious interference claim under Massachusetts law, because Quinn brought this Action in Massachusetts and contends that M.G.L. c. 93A applies.

who, what, when, where, and why underlying Quinn's tortious interference claim is absent from the Second Amended Complaint.  That omission is dispositive because merely reciting conclusory allegations that Defendants directed Desktop to breach the Engagement Letter is insufficient to state a plausible claim for relief.  *See, e.g.*, Second Am Compl. ¶¶ 92-100; *Iqbal*, 556 U.S. at 678.

But, the Second Amended Complaint reveals the *real* reason why Desktop did not pay: it did not have the cash.  According to Quinn, in January 2025—well before the Nano merger— Desktop was in "a dire financial situation" and "rapidly burning through its remaining cash." *Id.* ¶ 2.  Additionally, by early 2025—before Quinn sent Desktop a $30 million bill—Desktop "discussed bankruptcy with outside counsel."  *Id.* ¶ 34.  Indeed, Quinn never contends that, during the relevant times, Desktop had enough money or assets to pay Quinn's $30 million bill.  On the contrary, in the Delaware Court of Chancery, Quinn caused Desktop to seek permission to modify the merger agreement for the express purpose of taking out a loan to pay Quinn.  *Id.* ¶ 51.  Nor can Quinn contend that Desktop's financial position improved post-closing: Quinn alleges that it is "deeply misleading" to say Desktop is solvent.  *Id.* ¶ 64.  Because Quinn cannot plausibly allege that Desktop ever had the cash to pay its bill, it cannot allege that Defendants—rather than Desktop's financial condition—caused Desktop to breach the Engagement Letter.

Quinn should be estopped from arguing otherwise, because it prevailed on precisely this point before the New York Supreme Court in attachment proceedings.  Judicial estoppel bars "a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding."  *Otis v. Arbella Mut. Ins. Co.*, 443 Mass. 634, 639-40 (2005) (citation omitted).  It applies here because Quinn asserted a "directly inconsistent" position in a prior proceeding and won.  *See Mullins v. Corcoran*, 488 Mass. 275, 287 (2021) (quoting *Otis*, 443 Mass. at 640-41).  In July 2025, Quinn secured an attachment of Desktop's assets by arguing

12

that Desktop "is either insolvent or imminently facing insolvency" and "[c]ourts routinely grant attachment . . . when petitioners show that respondents are potentially insolvent . . . and unable to pay creditors." *Quinn Emanuel*, No. 652274/2025, NYSCEF Doc. No. 55 at 2, 16.

As such, Quinn cannot contend now that Defendants—not Desktop's insolvency—caused Desktop to breach the Engagement Letter. Its dueling theories of causation are inconsistent and mutually exclusive. Desktop cannot refuse to pay money that it does not have. Judicial estoppel thus warrants dismissal of Quinn's tortious interference claim.

### 2. *Quinn Does Not Sufficiently Plead Improper Motive Or Means.*

#### a. **No Actual Malice.**

Quinn also fails to plead that Defendants acted with the necessary improper motive. Typically, a tortious interference plaintiff must prove that the defendant's alleged interference "is wrongful by some measure beyond the fact of interference itself." *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 816 (1990) (citation omitted). But because Nano is Desktop's parent company and Mr. Baharav was a Desktop director, Quinn must meet an even higher standard here and establish that Defendants acted with "actual malice." *See Psy-Ed*, 459 Mass. at 716 (actual malice standard applies to corporate officials); *AngioDynamics, Inc. v. Biolitec, Inc.*, 2011 U.S. Dist. LEXIS 80734, at *23 (D. Mass. July 25, 2011) (applying actual malice standard to parent's alleged interference with subsidiary).

Actual malice is a demanding standard, which requires proof of "'a spiteful, malignant purpose, unrelated to the legitimate corporate interest.'" *Psy-Ed*, 459 Mass. at 716 (quoting *Blackstone v. Cashman*, 448 Mass. 255, 260-61 (2007)). Pursuit of financial gain "generally is not enough to satisfy" the requirement. *King v. Driscoll*, 418 Mass. 576, 587 (1994). Nor will "personal dislike . . . warrant an inference of the requisite ill will." *Id.* A defendant's intent must be "'entirely malevolent and unrelated to any legitimate corporate interest.'" *N'Tapalis v. Bickford*,

13

2013 Mass. Super. LEXIS 8, at *5 (Jan. 11, 2013) (citation omitted).

Said differently, Massachusetts law gives parent corporations wide latitude to manage their subsidiaries' contracts. Indeed, "a parent corporation, 'is privileged to 'interfere' with the contractual business of its subsidiary'" so long as the parent "'act[s] with the purpose of protecting [its] own legitimate economic interests, and without actual malice directed toward the plaintiff.'" *See Powderly*, 866 F. Supp. at 43 (quoting *Charles River*, 788 F. Supp. at 59). Further, because a party is legally incapable of interfering with its own contract, courts hesitate to impose liability on parent corporations for their subsidiaries' alleged contractual breaches. *See Powderly*, 866 F. Supp. at 43 (dismissing portion of tortious interference claim predicated on post-merger relationship between defendant and subsidiary); *see Warren Envtl., Inc., v. Source One Envtl., Ltd.*, 2020 U.S. Dist. LEXIS 72529, at *19 n.8 (D. Mass. Apr. 24, 2020) (concluding that exercising jurisdiction over parent on the theory that subsidiaries were parent's agents would be fatal to tortious interference claim against the parent because a party cannot interfere with its own contract).

Quinn's allegations are legally insufficient to plead actual malice. The Second Amended Complaint describes Desktop's journey into insolvency, the merger, the New York attachment proceedings, and Defendants' post-merger efforts to address Desktop's liabilities and liquidity needs. But Quinn alleges no statements or conduct by Defendants giving rise to the inference that Defendants told Desktop to withhold payment to seek revenge on Quinn.

In fact, assuming for argument's sake that Defendants directed Desktop not to pay Quinn, there is nothing tortious about a parent and its former CEO instructing an insolvent subsidiary headed to bankruptcy not to pay $30 million to its former lawyers (or any other similarly situated creditor).[4] As alleged, Defendants merely pursued Nano's financial interests through a wholly

---

[4]      Had Desktop paid Quinn's $30 million bill after it came due in late-April, it would have given rise to an obvious preference claim in Desktop's bankruptcy case and led to clawback of the funds. *See In re*

owned subsidiary, which does not establish actual malice. *See Geltman*, 406 Mass. at 817 (not improper for defendant "to benefit his customers and himself financially"); *Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B.*, 62 Mass. App. Ct. 34, 39 (2004) (similar).

Equally insufficient is Quinn's overarching claim that Defendants are executing a plan to "[d]rive Desktop Metal into bankruptcy, scoop up any assets Nano has not yet plundered at rock-bottom prices, and leave creditors with next to nothing." Second Am. Compl. ¶ 83. Even if that were true—and it is not—it would not establish that Defendants acted with actual malice, because profit management within a corporate family is a legitimate business objective. *See, e.g.*, *N'Tapalis*, 2013 Mass. Super. LEXIS 8, at *5 (dismissing tortious interference claim where alleged wrongful motive was withholding profits); *Powderly*, 866 F. Supp. at 43 (merger of companies barred post-merger tortious interference claim against parent); *Eaton Vance Senior Income Trust v. Saba Cap. Master Fund, Ltd.*, 2021 Mass. Super. LEXIS 48, at *15 (Mar. 31, 2021) (dismissing tortious interference claim against investment adviser whose only alleged motive was "fear[ing] losing substantial future fees"); *see also PayPal, Inc. v. NantHealth, Inc.*, 2019 Mass. Super. LEXIS 58, at *5-6 (Apr. 16, 2019) ("in the absence of evidence that a corporate parent used its relationship with a subsidiary to defraud or unfairly injure the landlord in some way, the parent cannot be held liable for its subsidiary's breach of a lease merely because the parent controlled the subsidiary").

To be sure, Quinn alleges Defendants were "motivated by malice and a desire to retaliate against Quinn Emanuel for its successful representation of Desktop." Second Am. Compl. ¶ 97. But Quinn never corroborates that conclusory assertion with specific facts suggesting Defendants somehow avenged their litigation loss by refusing to pay Quinn. Instead, Quinn pleads a tacky *ad*

---

*Fin. Oversight & Mgmt. Bd. for P.R.*, 121 F.4th 280, 307 (1st Cir. 2024) (noting 11 U.S.C. § 547(b) allows claims to recover preferential transfers made to creditors within 90 days before a bankruptcy filing).

*hominem* attack that "[r]etaliation is how Defendants do business." *Id.* ¶ 84. Otherwise, the only facts Quinn alleges are: (i) Nano lost to Quinn in litigation and (ii) Quinn has not been paid. Those barebones assertions are insufficient to plead actual malice. *See Twombly*, 550 U.S. at 557.

On such thin allegations, dismissing the tortious interference claim aligns with the Suffolk County Superior Court's recent decision in *Impact Technology Licensing, LLC v. Barry-Wehmiller Co., Inc.*, 2025 Mass. Super. LEXIS 39 (Mar. 7, 2025). There, plaintiffs alleged that the defendants interfered with a contract's anti-assignment provision to "punish and harm" the plaintiff and felt "resentment" and "ire" at having to pay royalties under the contract. *Id.* at *32-33. At the Rule 12(b)(6) stage, the court deemed the plaintiffs' allegations of improper motive implausible, because the allegations concerning "resentment" and "ire" toward the royalty payments showed the defendants were "motivated by economic self-interest, nothing more." *Id.* at *33. The same reasoning applies here and warrants dismissal.

### b.     No Improper Means.

Quinn also fails to plead improper means. Improper means can be shown where a defendant induced a contractual breach through statutory or common law violations, threats, misrepresentations, or defamation. *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 540 (1st Cir. 2023).

The Second Amended Complaint never alleges that Defendants committed breaches of common law duties, made threats, or engaged in defamation. Apparently, the best Quinn can do is, in conclusory fashion, allege that Defendants "rush[ed]" Desktop "to bankruptcy in an attempt to undermine Quinn Emanuel's statutory entitlement to an attachment" and caused Desktop to "violate its statutory obligations to honor Quinn Emanuel's attorney lien." Second Am. Compl. ¶¶ 98-99. But neither assertion makes any sense. Factually, the allegation that Defendants rushed Desktop to bankruptcy to thwart an attachment is not a "means" by which Defendants allegedly

induced Desktop to breach the Engagement Letter.  Temporally, Desktop filed its chapter 11 petition on July 28, 2025, weeks after Quinn first sued Defendants for allegedly inducing a breach of contract.  And legally, Desktop's assertion of its own legal rights under the Bankruptcy Code is not improper means.  *Cf. Armstrong v. White Winston Select Asset Funds, LLC*, 648 F. Supp. 3d 230, 256 (D. Mass. 2022) (quoting *Skyhook Wireless, Inc. v. Google, Inc.*, 86 Mass. App. Ct. 611, 622 (2014)) ("'[t]he assertion by a party of its legal rights is not 'improper means' for purposes of a tortious interference claim.'").

Moreover, as shown above, Quinn's supposed attorney's lien is unenforceable.  *Supra* at III.A.  So, even if it were possible to "violate" N.Y. Jud. Law § 475—and it is not, because that provision merely grants a cause of action but prohibits no conduct—Defendants did not do so.

Finally, Quinn alleges that Desktop's lawyers made misrepresentations during the New York attachment proceedings.  *See, e.g.*, Second Am. Compl. ¶¶ 8, 64, 67.  It is difficult to make sense of the theory that alleged in-court statements by Desktop's lawyers somehow induced Desktop to breach the Engagement Letter, let alone establish Nano's liability.  Even putting those problems aside, however, Massachusetts law broadly treats litigation conduct as privileged, so it cannot be grounds for liability anyway.  *See Bassichis v. Flores*, 490 Mass. 143, 151 (2022); *Doe v. Nutter, McClennen & Fish*, 41 Mass. App. Ct. 137, 140-41 (1996).  Accordingly, Quinn fails to plausibly plead that Defendants induced an alleged contractual breach through improper means.

## C.    Quinn's Chapter 93A Claim Is Legally Defective.

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  M.G.L. c. 93A, § 2(a).  Section 11 of Chapter 93A provides a cause of action for businesses to bring claims against defendants who cause damages through "use or employment" of "an unfair method of competition or an unfair or

deceptive act or practice." *Id.* § 11.  Here, Quinn's Chapter 93A claim fails for three reasons.

### 1.    *The Chapter 93A Claim Fails As Duplicative Of Quinn's Other Claims.*

First, because Quinn's Chapter 93A claim arises from the same allegations as the attorney's lien and tortious interference claims, Defendants' arguments that those claims are implausible apply to the Chapter 93A claim too, and warrant dismissal.  *See Pembroke Country Club*, 62 Mass. App. Ct. at 40-41; *Eri/Integral Holdings LLC v. Integral Fund I Inv., LLC*, 2024 Mass. Super. LEXIS 63, at *21 (May 31, 2024).

At bottom, Quinn seeks to hold Desktop's corporate parent and its former CEO liable for Desktop's alleged breach of contract.  Because Quinn alleges no facts suggesting that Defendants played any role in Desktop's alleged breach, its claims should be dismissed.  *See Schlumberger Tech. Corp. v. Are-Ma Region No. 103, LLC*, 2024 Mass. Super. LEXIS 40, at *5-6 (Apr. 8, 2024) (dismissing Chapter 93A claim against parent for subsidiary's conduct where complaint lacked any facts suggesting parent played an "active role" in the conduct giving rise to the Chapter 93A claim); *Speakman v. Allmerica Fin. Life Ins. & Annuity Co.*, 367 F. Supp. 2d 122, 142 (D. Mass. 2005) ("claims against such corporate affiliates may not be based on conclusory allegations, but must include specific allegations").  Quinn therefore fails to state a claim.

### 2.    *Quinn Did Not Plead A Jurisdictional Nexus To Massachusetts.*

In addition, claims are not actionable under Section 11 "unless the actions and transactions constituting the . . . unfair or deceptive act or practice occurred primarily and substantially within the commonwealth."  M.G.L. c. 93A, § 11.  No bright-line rule governs this nexus element.  *See Kuwaiti Danish Comput. Co. v. Digital Equip. Corp.*, 438 Mass. 459, 472 n.13 (2003) (describing the test as "functional").  Instead, the Court must decide whether the factual allegations underlying the claim are such that its "center of gravity" is "primarily and substantially" in Massachusetts. *Id.* at 473.  Under that standard, a "bare allegation" that a party is based in Massachusetts and

injured here "warrants dismissal." *See CrunchTime! Info. Sys. v. Frischs Rests., Inc.*, 768 F. Supp. 3d 183, 186 (D. Mass. 2025) (collecting cases).

Measured against this benchmark, the Second Amended Complaint comes up short. This case is about Desktop's alleged breach of the Engagement Letter, which relates to Delaware litigation by an international law firm against an entity incorporated in Israel. *See id.* ¶¶ 10-11, 36. Quinn alleges that New York law governs "disputes surrounding the Engagement Letter." *Id.* ¶ 43. And, to date, Quinn's efforts to recover under the Engagement Letter have happened in Delaware (where Quinn lost its fee-shifting motion), New York (where Quinn demanded arbitration and attached Desktop's assets), and Texas (where Quinn first asserted an attorney's lien "claim" against Desktop in mid-August 2025). *Id.* ¶¶ 51, 57-58, 66; *In re Desktop Metal, Inc.*, No. 25-90268, Not. of Perfection and Intent to Enforce Attorney's Lien (Bankr. S.D. Tex. Aug. 18, 2025) (ECF No. 201). Most fundamentally, Quinn alleges no acts that Defendants took in Massachusetts to induce Desktop's nonpayment. *See generally* Second Am. Compl.

Accordingly, despite the parties' alleged residencies, *see* Second Am. Compl. ¶¶ 10, 13, Massachusetts is not the "center of gravity" for Quinn's claims. *See CrunchTime!*, 768 F. Supp. 3d at 186 (dismissing where plaintiff alleged defendant's principal place of business was in Boston and Massachusetts law governed the parties' contract, but nothing in the complaint "elaborate[d] on specific facts having occurred in, or being related to, Massachusetts"); *HC&D, LLC v. Precision NDT & Consulting LLC*, 2024 U.S. Dist. LEXIS 197069, at *19-20 (D. Mass. Oct. 30, 2024) (dismissing where plaintiff alleged defendant was headquartered and incorporated in Massachusetts and contract was governed by Massachusetts law, but failed to plead location of defendant's alleged misstatements). Certainly, Quinn's alleged damages have no connection to Massachusetts because Quinn, a California LLP, which "maintains offices throughout the world,"

never alleges any Massachusetts-specific harm.  Second Am. Compl. ¶ 10.  In fact, Quinn never contends that any of its Massachusetts-based employees worked on the Desktop litigation.  *See generally* Second Am. Compl.  Instead, it seems Quinn's New York office was the "center of gravity" for the Delaware litigation between Desktop and Nano.  *See id.* ¶ 43.

### 3.    *Quinn Did Not Plead A Commercial Relationship.*

Finally, Quinn's Chapter 93A claim fails for a third, independent reason.  Because Quinn brings its claim under M.G.L. c. 93A, § 11, it must allege a "commercial transaction between the parties."  *See Rafferty v. Merck & Co.*, 479 Mass. 141, 162 n.7 (2018); *Liberty Mut. Ins. Co. v. Thurber*, 2022 U.S. Dist. LEXIS 108192, at *6 (D. Mass. June 17, 2022) (a business plaintiff "must plead the additional fifth element that there was a 'commercial relationship' between itself and a defendant") (citation omitted).  Despite its relationship with Desktop, Quinn never alleges a commercial relationship between itself and the Defendants.

Indeed, the Second Amended Complaint reveals that the parties' sole relationship is as litigation adversaries.  More is required to bring a Section 11 claim.  *See Milliken & Co. v. Duro Textiles, LLC*, 451 Mass. 547, 564 (2008) (granting summary judgment on Section 11 claim after concluding plaintiff and defendants were not "engaged in trade or commerce" when discussing potential restructuring of debt owed to plaintiff by defendant's predecessor); *see also Aggregate Indus. – N.E. Region, Inc. v. Hugo Key & Sons, Inc.*, 90 Mass. App. Ct. 146, 152 (2016) ("the unfair or deceptive conduct alleged must itself arise from trade or commerce, and not tangentially from litigation concerning that conduct"); *In re Glasshouse Techs.*, 604 B.R. 600, 638 (Bankr. D. Mass. 2019) (dismissing Section 11 claim brought by a creditor against the debtor's insurance broker because "any contact" between the creditor and broker "was indirect").

## IV.    CONCLUSION.

The Second Amended Complaint should be dismissed for failure to state a claim.

DATED:        September 11, 2025             Respectfully Submitted,

                                            NANO DIMENSION LTD. AND OFIR
                                            BAHARAV,

                                            *By their attorneys,*

                                            /s/ Samuel N. Rudman
                                            Samuel N. Rudman (BBO No. 698018)
                                            J.P. Jaillet (BBO No. 647299)
                                            John B. Lucy, Jr. (BBO No. 710083)
                                            **CHOATE, HALL & STEWART LLP**
                                            Two International Place
                                            Boston, MA 02110
                                            Telephone:  617-248-5000
                                            *srudman@choate.com*
                                            *jjaillet@choate.com*
                                            *jlucy@choate.com*

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2025, the foregoing document and supporting materials were filed using the CM/ECF system and electronic notice will be sent to registered participants as indicated on the Notice of Electronic Filing (NEF).

                                            /s/ Samuel N. Rudman
                                            *Counsel for Defendants*