# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

QUINN EMANUEL URQUHART
  & SULLIVAN, LLP,

                Plaintiff,

                v.

NANO DIMENSION LTD. and OFIR
BAHARAV,

                Defendants.

Civil Action No.: 1:25-cv-12159-BEM

**ORAL ARGUMENT REQUESTED**

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................................1

BACKGROUND ........................................................................................................................1

      A.      Desktop Metal's Lawsuit Against Nano ...................................................................1

      B.      Desktop Metal's Retention Of Quinn Emanuel And Victory Against Nano ...........2

      C.      Defendants Block Desktop Metal From Paying Quinn Emanuel ...........................3

LEGAL STANDARD ..................................................................................................................4

ARGUMENT ..............................................................................................................................5

I.      Quinn Emanuel Plausibly Alleges Its Attorney Lien (Count I) ............................................5

      A.      Quinn Emanuel Has An Attorney Lien....................................................................5

      B.      Quinn Emanuel Has Not Waived Enforcement Of The Lien ..................................9

II.      Quinn Emanuel Plausibly Alleges Its Tortious Interference Claim (Count II) .................11

      A.      Nano Caused Desktop Metal To Breach Its Contract With Quinn Emanuel.........12

      B.      Defendants Acted With Both Improper Motive And Means ................................13

III.      Quinn Emanuel Plausibly Alleges Its Chapter 93A Claim (Count III) ............................17

IV.      Alternatively, Quinn Emanuel Should Be Granted Leave To Amend.............................20

CONCLUSION.........................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### Cases

*Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*,
   374F.3d 23 (1st Cir. 2004) ........................................................................................13

*AngioDynamics, Inc. v. Biolitec, Inc.*,
   2011 WL 3157312 (D. Mass. July 25, 2011) ............................................................15

*Arthur D. Little, Inc. v. Dooyang Corp.*,
    147 F.3d 47 (1st Cir. 1998) ...............................................................................17, 20

*Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*,
   469 Mass. 813 (2014) ................................................................................................17

*Avaras v. Clarkstown Cent. Sch. Dist.*,
   2021 WL 5745718 (S.D.N.Y. Dec. 2, 2021) ............................................................11

*Banque Indosuez v. Sopwith Holdings Corp.*,
   772 N.E.2d 1112 (2002) ...............................................................................................7

*Botein, Hays, Sklar & Herzberg v. Polymetrics Int'l, Inc.*,
   366 N.Y.S.2d 251  (Civ. Ct. 1975) ...........................................................................10

*Cardigan Mountain Sch. v. New Hampshire Ins. Co.*,
   787 F.3d 82 (1st Cir. 2015) ..........................................................................................4

*Church v. United States*,
   772 F. Supp. 3d 223 (D. Mass. 2025) ........................................................................13

*Conformis, Inc. v. Aetna, Inc.*,
   58 F.4th 517 (1st Cir. 2023) ................................................................................14, 16

*CrunchTime! Info. Sys. v. Frischs Rests., Inc.*,
   768 F. Supp. 3d 183 (D. Mass. 2025) ........................................................................19

*United States ex rel. D'Agostino v. EV3, Inc.*,
   802 F.3d 188 (1st Cir. 2015) .......................................................................................20

*DeCastro v. Kavadia*,
   2018 WL 4771528 (S.D.N.Y. Oct. 3, 2018) ...........................................................6, 7

*Desktop Metal, Inc. v. Nano Dimension Ltd.*,
   2025 WL 904521 (Del. Ch. Mar. 24, 2025)................................................................6

*Ekelman v. Marano*,
   251 N.Y. 173 (1929) .................................................................................................8

*Eri/Integral Holdings LLC v. Integral Fund I Inv'r, LLC*,
   2024 Mass. Super. LEXIS 63 (May 31, 2024) .......................................................18

*First Enters., Ltd. v. Cooper*,
   425 Mass. 344 (1997) .............................................................................................20

*Fischer-Hansen v. Brooklyn Heights R.R. Co.*,
   173 N.Y. 492 (1903) .............................................................................................6, 7

*Fontana v. Rep. of Arg.*,
   2021 WL 4481874 (S.D.N.Y. Sept. 30, 2021)........................................................11

*Fontana v. Rep. of Arg.*,
   962 F.3d 667 (2d Cir. 2020) ...........................................................................6, 9, 11

*Geller v. Allied-Lyons PLC*,
   42 Mass. App. Ct. 120 (1997)................................................................................16

*Guest-Tek Interactive Entm't Inc. v. Pullen*,
   731 F. Supp. 2d 80 (D. Mass. 2010) .....................................................................18

*Harley & Browne*,
   957 F. Supp. 44 (S.D.N.Y. 1997) ..........................................................................11

*HC&D, LLC v. Precision NDT & Consulting LLC*,
   2024 WL 4626223 (D. Mass Oct. 30, 2024)..........................................................19

*Hellerstein v. Hellerstein*,
   760 N.Y.S.2d 430 (2003).......................................................................................11

*HipSaver Co. v. J.T. Posey Co.*,
   490 F. Supp. 2d 55 (D.Mass. 2007) ......................................................................19

*Iglesias v. HRA Pharma Am., Inc.*,
   2023 WL 5277424 (S.D.N.Y. Aug. 16, 2023)........................................................20

*Impact Tech. Licensing, LLC v. Barry-Wehmiller Co., Inc.*,
   2025 Mass. Super. LEXIS 39 (Mar. 7, 2025) .......................................................15

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,
   140 F.3d 442 (2d. Cir. 1998).................................................................................9

*John Beaudette, Inc. v. Sentry Ins. A Mut. Co.*,
   94 F. Supp. 2d 77 (D. Mass. 1999), .....................................................................19

*KACT, Inc. v. Rubin*,
    62 Mass. App. Ct. 689 (2004) ..............................................................................15

*Kaplan v. Port Taxi, Inc.*,
    452 N.Y.S.2d 237 (App. Div. 1982), ....................................................................7

*Kaplan v. Reuss*,
    495 N.Y.S. 2d 404 (App. Div. 1985), ...........................................................10, 11

*Linkage Corp. v. Trs. Of Boston Univ.*,
    425 Mass. 1 (1997) ......................................................................................17, 19

*LMWT Realty Corp. v. Davis Agency Inc.*,
    85 N.Y.2d 462 (1995) ............................................................................................9

*Natole v. Natole*,
    744 N.Y.S.2d 227 (App. Div. 2002) ......................................................................7

*In re Pan Am Corp.*,
    166 B.R. 538 (S.D.N.Y. 2004) ..............................................................................8

*Pembroke Country Club, Inc. v. Regency Sav. Bank*,
    62 Mass. App. Ct. 34 (2004) ...............................................................................18

*Petition of Rosenman & Colin*,
    850 F.2d 57 (2d Cir. 1988) .....................................................................................8

*Powderly v. MetraByte Corp.*,
    866 F. Supp. 39 (D. Mass. 1994) ........................................................................15

*Primarque Prods Co. v. Williams West & Witt's Prods Co.*,
    2015 WL 10097150 (D. Mass. Nov. 18, 2015) ...................................................18

*Riccio v. Ford Motor Credit Co.*,
    238 F.R.D. 44 (D. Mass. 2006) .............................................................................9

*Robinson v. Spencer Stuart, Inc.*,
    2013 WL 3989672 (D. Mass. Aug. 5, 2013) .......................................................13

*Santander Bank, N.A. v. Warrender*,
    760 F.3d 130 (1st Cir. 2014) ..................................................................................8

*Santos v. E T & K Foods, Inc.*,
    2019 WL 2435857 (E.D.N.Y. Feb. 26, 2019) .......................................................5

*In re Schick*,
    215 B.R. 13 (Bankr. S.D.N.Y. 1997) ................................................................7, 8

*Schlumberger Tech. Corp. v. Are-Ma Region No. 103, LLC,*
 2024 Mass. Super. LEXIS 40 (Apr. 8, 2024).........................................................18

*Schneider, Kleinick, Weitz, Damashek & Shoot v. City of N.Y.,*
 754 N.Y.S.2d 220 (2002)..................................................................................10

*Speakman v. Allmerica Fin. Life Ins. & Annuity Co.,*
 367 F. Supp. 2d 122 (D. Mass. 2005)................................................................18

*Stair v. Calhoun,*
 722 F. Supp. 2d 258 (E.D.N.Y. 2010) ................................................................9

*In re Stream TV Networks Omnibus Agmt. Litig.,*
 283 A.3d 1183 (Del. Ch. 2022)..........................................................................8

*Thornton v. Ipsen Biopharm., Inc.,*
 126 F.4th 76 (1st Cir. 2025)...............................................................................4

*Todd v. Mut. Factors, Inc.,*
 161 N.Y.S.2d 738 (App. Div. 1957) ...................................................................7

*Tunick v. Shaw,*
 2004 WL 3133245 (N.Y. Sup. Ct. Dec. 10, 2004) ..........................................5, 6

*Tunick v. Shaw,*
 842 N.Y.S.2d 395 (N.Y. App. Div. 2007) ...........................................................5

*United Truck Leasing Corp. v. Geltman,*
 406 Mass. 811 (1990) ......................................................................................16

*Valentini v. 326 E. 30th St. Owners, Inc.,*
 173 N.Y.S.3d 479 (N.Y. Sup. Ct. 2022) ...........................................................11

*Weiler v. PortfolioScope, Inc.,*
 469 Mass. 75 (2014) ............................................................................12, 13, 15

*Williams v. B&K Med. Sys., Inc.,*
 49 Mass. App. Ct. 563 (2000) ..........................................................................14

## Statutes

G.L. 93A § 11 ........................................................................................................17

N.Y. Jud. Law § 475 .........................................................................................5, 6, 7

## Rules

Fed. R. Civ. P. 8(a)(2)..............................................................................................4

Fed. R. Civ. P. 9(b) ........................................................................................................12

Fed. R. Civ. P. 15(a)(2)...................................................................................................20

**Other Authorities**

57 N.Y. Jur. 2d Estoppel, Etc. § 93....................................................................................9

Plaintiff Quinn Emanuel Urquhart & Sullivan, LLP respectfully submits this memorandum of law in opposition to Defendants' Motion to Dismiss and Memorandum of Law (Dkt. 24, "Br.").

## INTRODUCTION

Quinn Emanuel is a renowned law firm that represented non-party Desktop Metal, Inc. in a bet-the-company case to force Defendant Nano Dimension Ltd. to purchase Desktop Metal under a merger agreement. After litigating novel issues in just three months from filing to final judgment, Quinn Emanuel won the case and saved Desktop Metal. For its efforts, Quinn Emanuel received sterling praise from the Delaware court, the press, and, most importantly, the client. But Quinn Emanuel has not been paid a dime of the $30 million it is owed. Nano and its former CEO, Defendant Ofir Baharav, used their new control over Desktop Metal to block it from paying Quinn Emanuel out of spite for its litigation success. Quinn Emanuel sued Defendants in Massachusetts Superior Court for various state-law claims. Defendants responded by forcing Desktop Metal into bankruptcy and removing this case. Defendants now move to dismiss this case in its entirety.

Quinn Emanuel's allegations are more than plausible and establish that Defendants are liable for interfering with an attorney lien (Count I), tortious interference with contract (Count II) and unfair and deceptive trade practices under Massachusetts Chapter 93A (Count III).

For all of these reasons, the Court should deny Defendants' motion to dismiss.

## BACKGROUND

### A.    Desktop Metal's Lawsuit Against Nano

Desktop Metal is a major player in the 3D printing industry. Dkt. 13 ("SAC") ¶¶ 16-17. After extensive negotiations, Nano, a NASDAQ-listed Israeli company, agreed to purchase Desktop Metal in mid-2024 for approximately $183 million. *Id.* ¶¶ 19-23. Mr. Baharav, a disgruntled former CEO of Nano, spied an opportunity to take back control of his old company.

*Id.* ¶ 24.  He launched a proxy fight to take over Nano, arguing that Nano should pull out of the merger, let Desktop Metal fall into bankruptcy, and buy its assets at bargain prices.  *Id.* ¶¶ 24–26.

Mr. Baharav's proxy fight was successful.  *Id.* ¶ 27.  He used his control of Nano to execute a bad-faith scheme to back out of the agreement.  *Id.* ¶ 28.  His plan was simple:  stonewall the regulatory approval process.  *Id.*  Mr. Baharav caused Nano to drag its feet in the approval process, all but ensuring that the U.S. government would block the deal.  *Id.* ¶¶ 28–29.

These delays ultimately forced Desktop Metal to sue Nano for specific performance in the Delaware Court of Chancery.  *Id.* ¶ 30.  Desktop Metal filed suit in December 2024, but the merger agreement required that the deal close by March 31, 2025.  *Id.* ¶ 33.  No "busted-deal" case, let alone one involving novel national security–review issues, had ever been litigated so quickly.  *Id.*

### B.    Desktop Metal's Retention Of Quinn Emanuel And Victory Against Nano

Desktop Metal turned to Quinn Emanuel, the world's leading litigation firm with experience in "busted deal" cases, to represent it in its "bet-the-company" case against Nano.  SAC ¶ 35.  Quinn Emanuel gave Desktop Metal an extremely generous deal, shouldering much of the risk itself.  *Id.* ¶ 37.  Quinn Emanuel agreed to work on the case at 50% of its normal hourly rates.  *Id.* ¶¶ 37–38.  If Quinn Emanuel prevailed, the parties agreed, Desktop Metal would pay the firm 120% of its normal hourly rates.  *Id.* ¶ 38.  To further protect Quinn Emanuel, the parties' contract had an attorney lien on any funds recovered in the litigation.  *Id.* ¶ 42.

Quinn Emanuel devoted substantial resources to the case, including twenty-seven attorneys working night and day, during the three months between filing and final judgment.  *Id.* ¶¶ 44–45.  During that time, Quinn Emanuel's team (1) produced tens of thousands of documents; (2) took and defended 22 depositions; (3) briefed several motions; and (4) conducted a 2-day trial, where the record comprised 2,620 trial exhibits, live testimony from 7 fact and 4 expert witnesses, deposition testimony from 20 witnesses, and 47 stipulations of fact.  *Id.* ¶ 46.

The work paid off. In late March, the Delaware Court of Chancery found that Nano deliberately delayed, obstructed, and avoided closing the merger, in breach of its obligations under the contract, and the court ordered Nano to complete the transaction. SAC ¶ 47. The court called Quinn Emanuel's efforts "herculean." *Id.* The merger closed in early April, and Desktop Metal became a wholly owned subsidiary of Nano. *Id.* ¶ 49.

### C.    Defendants Block Desktop Metal From Paying Quinn Emanuel

Having learned in the Delaware proceedings about Defendants' history of bad faith, Quinn Emanuel became concerned that Defendants would, out of spite, block Desktop Metal from paying Quinn Emanuel. SAC ¶ 50. Immediately after the merger closed, Quinn Emanuel sent a formal demand letter to both Desktop Metal and Nano notifying them of Quinn Emanuel's attorney lien and requesting confirmation of payment. *Id.* ¶¶ 54, 56. Pursuant to the attorney lien, Nano was required to pay Quinn Emanuel first out of the funds it paid to Desktop Metal's shareholders under the Delaware Court of Chancery's final judgment. *Id.* ¶ 53. Nano refused to do so. *Id.* ¶ 55.

True to form, Defendants used their control to block Desktop Metal from paying even a dollar of the approximately $30 million in fees owed. *Id.* ¶¶ 59, 68. Quinn Emanuel commenced an arbitration against Desktop Metal, seeking an attachment of the company's assets in New York state court. *Id.* ¶¶ 57–58. Desktop Metal stalled these proceedings by contending it had not repudiated its contract obligations but was taking time to review Quinn Emanuel's bills. *Id.* ¶¶ 58, 64. Months passed, and Desktop Metal did not express any willingness to pay Quinn Emanuel, nor has it identified any dispute that it has with Quinn Emanuel's bills. *Id.* ¶¶ 59–61.

The New York state court eventually saw through Desktop Metal's empty reassurances and granted Quinn Emanuel an attachment of $34 million against Desktop Metal. *Id.* ¶ 66. The court noted that "no payments have been made" since Quinn Emanuel's bills became due; that "there is no real dispute that Quinn" is likely to prevail on its claims, given that Desktop Metal

"has shown no intention of paying" its bills; and Desktop Metal's "refusal to assure its former lawyers that it will pay for their 'herculean' efforts in the Delaware case [is] . . . troubling." *Id.* Three days after the attachment order issued, Desktop Metal informed Quinn Emanuel that it would file for bankruptcy. *Id.* ¶ 67. Obtaining a bankruptcy stay before Quinn Emanuel could levy on Desktop Metal's property would effectively moot the attachment order. *Id.*

Without question, Defendants are responsible for Desktop Metal's wrongful conduct. Desktop Metal did not act wrongfully before Defendants' assumed control, and a rational company would not stonewall its former law firm and refuse to even engage in fee negotiations. SAC ¶¶ 68–69. Desktop Metal conceded in the New York proceeding that its new owners were directing it not to pay Quinn Emanuel. *Id.* ¶ 71. Nano has 100% ownership of Desktop Metal, gave Desktop Metal funding to cover its debts, paid for their lawyers, and appointed Mr. Baharav—who controlled Nano—to be a director for Desktop Metal so he could implement its vision. *Id.* ¶¶ 72–74. This is the very sort of bad faith deception and delay tactics that the Delaware Court of Chancery found Defendants engaged in when seeking to unwind their acquisition of Desktop Metal. *Id.* ¶¶ 47, 70.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff "need not demonstrate that [it] is likely to prevail" on its claims. *Cardigan Mountain Sch. v. New Hampshire Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015) (citation omitted). "[T]he complaint need include only enough factual detail to make the asserted claim 'plausible on its face.'" *Id.* (citation omitted). This is "a relatively low bar." *Thornton v. Ipsen Biopharm., Inc.*, 126 F.4th 76, 80 (1st Cir. 2025). Courts must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *Cardigan Mountain Sch.*, 787 F.3d at 87 (cleaned up).

## ARGUMENT

### I.    Quinn Emanuel Plausibly Alleges Its Attorney Lien (Count I)

Quinn Emanuel plausibly alleged that Defendants violated their duties to honor Quinn Emanuel's attorney lien.  *See* N.Y. Jud. Law § 475 (McKinney 2013).  Defendants contend that (1) no attorney lien ever existed and (2) Quinn Emanuel waived any claim to a lien by failure to enforce the lien.  Br. 13.  Both of these arguments are meritless.

#### A.    Quinn Emanuel Has An Attorney Lien

Section 475 of New York's Judiciary Law creates an attorney lien that attaches to a favorable "verdict, report, determination, decision, award, settlement, judgment or final order" and to "the proceeds thereof in whatever hands they may come."  An attorney lien provides a "security interest" to attorneys who secure a favorable result, and it "should be construed liberally in aid of the object sought by the legislature, which was to furnish security to attorneys."  *Santos v. E T & K Foods, Inc.*, 2019 WL 2435857, at *10 (E.D.N.Y. Feb. 26, 2019) (citation omitted).  There are three prerequisites for a valid lien: "as a result of the attorney's efforts, (1) the client must assert a claim (2) which results in proceeds (3) payable to or for the benefit of the client."  *Tunick v. Shaw*, 2004 WL 3133245, at *3 (N.Y. Sup. Ct. Dec. 10, 2004), *aff'd as modified*, 842 N.Y.S.2d 395 (App. Div. 2007).  The first element requires the client have an "affirmative recovery," meaning a lien does not attach when an attorney merely defends property the client already owns.  *Id.*  Under the second and third elements, "the lien attaches only when proceeds in an identifiable fund are created by the attorney's efforts."  *Id.*  The attorney "may collect out of funds or property he obtains on behalf of his client on the theory that it is the attorney who has created the fund out of which he is paid by his efforts."  *Id.*  (internal quotation marks omitted).

Defendants do not dispute the first element but contend that Desktop Metal recovered no proceeds from the Delaware case because it obtained only specific performance; even if proceeds

were created, those proceeds went to Desktop Metal's shareholders, not the company itself; and finally that the Delaware Judgment invalidated the attorney lien. Br. 13-15. Not so.

*First*, a valid lien exists because Nano's specific performance created proceeds to which the attorney lien attached. Under the statute, an attorney lien exists when the attorney's efforts generate "proceeds." N.Y. Jud. Law § 475. "Proceeds" are broadly construed because the "lien is imposed on the client's cause of action, in whatever form it may take during the course of litigation, and follows the proceeds, wherever they may be found." *See Tunick*, 842 N.Y.S.2d at 397 (attorney lien attached to collection of photographs recovered); *Fontana v. Rep. of Arg.*, 962 F.3d 667, 674-75 (2d Cir. 2020) (lien attaches to settlement); *DeCastro v. Kavadia,* 2018 WL 4771528, at *4 (S.D.N.Y. Oct. 3, 2018) (attorney lien attached to diamonds and subsequent sale because "non-cash proceeds can qualify as 'proceeds'"); *Fischer-Hansen v. Brooklyn Heights R.R. Co.,* 173 N.Y. 492, 501-02 (1903) ("[T]he general rule is that a lien upon property attaches to whatever the property is converted into and is not destroyed by changing the nature of the subject" because the lien "clings to any property or money into which the subject can be traced").

Here, as Defendants recognize, the specific performance mandated by the Delaware Court of Chancery's order included Nano's "pay[ing] the full Per Share Merger Consideration" to Desktop Metal. *Desktop Metal, Inc. v. Nano Dimension Ltd.*, No. 2024-1303-KSJM, Order and Partial Final J., ¶ 3 (Del. Ch. March 24, 2025) (ECF No. 445); Br. 13-14. That consideration created proceeds to which Quinn Emanuel's attorney lien attached. *See Desktop Metal, Inc. v. Nano Dimension Ltd.*, 2025 WL 904521, at *6 (Del. Ch. Mar. 24, 2025) (ordering Nano to comply with the Merger Agreement, which required Nano "to acquire all outstanding shares of Desktop in an all-cash transaction for approximately $183 million"). Defendants' cases do not hold that specific performance which results in an identifiable fund cannot be "proceeds." *See Banque*

*Indosuez v. Sopwith Holdings Corp.*, 98 N.Y.2d 34, 37 (2002) (considering only "narrow issue" of whether an attorney lien is entitled to priority over plaintiff's right to set off its larger judgment); *Natole v. Natole*, 744 N.Y.S.2d 227, 229 (App. Div. 2002) (holding only that defendant's lawyer could not assert charging lien when judgment entered for plaintiff).

     *Second*, a valid lien exists because the proceeds from the merger consideration were for the benefit of Desktop Metal—that is, the client which hired Quinn Emanuel specifically to obtain this outcome. Defendants wrongly claim that Desktop Metal did not receive an affirmative recovery because "not a single dollar passed to Desktop [Metal]" but went instead to its shareholders. Br. 14. That is irrelevant. Defendants' own authorities explain that "proceeds" include funds "payable to *or for the benefit of the client*." *See In re Schick*, 215 B.R. 13, 15 (Bankr. S.D.N.Y. 1997) (emphasis added). Defendants do not—and cannot—challenge that the merger consideration was for the benefit of Desktop Metal. Desktop Metal hired Quinn Emanuel to obtain this specific performance because the merger was the best chance for it to survive and thrive as a business. The statute also provides that the lien attaches to the proceeds "*in whatever hands they may come.*" N.Y. Jud. Law § 475 (emphasis added). That is, "the statute created 'a lien in favor of the attorney on his client's cause of action'" and "enables [the attorney] to follow the proceeds." *Fischer-Hansen,* 173 N.Y. at 498, 501; *see Kaplan v. Port Taxi, Inc.*, 452 N.Y.S.2d 237, 238 (App. Div. 1982) (lien attached to refund checks that went to third party because the funds were obtained on client's behalf through the attorney's efforts); *Todd v. Mut. Factors, Inc.,* 161 N.Y.S.2d 738, 741 (App. Div. 1957) ("[T]here is a clearly stated legislative intent that [proceeds] come[] directly from the litigated process into the hands of . . . third parties with the stamp of the lien attached") *aff'd*, 4 N.Y.2d 759 (1958); *DeCastro,* 2018 WL 4771528, at *4 (citing cases).

Defendants do not address this authority. Instead, Defendants' authorities primarily stand for the unremarkable proposition that an attorney lien does not attach when the outcome of the proceeding is not in the client's favor or results in the client's merely avoiding a liability. That is not the case here. *See Petition of Rosenman & Colin*, 850 F.2d 57, 62-63 (2d Cir. 1988) (limiting attorney lien to insurance proceeds because client did not receive recovery on other two claims); *In re Schick*, 215 B.R. at 16, 18 (finding that "lien claim suffer[ed] from several deficiencies," including that defendant already owned the fund, so the attorney's "efforts would not create a fund"); *Ekelman v. Marano*, 251 N.Y. 173, 176 (1929) (no attorney lien attached where there was "no decree in the wife's favor"); Defendants' other authorities (Br. 14) likewise do not support the proposition for which they are cited, namely, that "[a]n attorney cannot obtain a lien against funds to which his client has no claim." *In re Pan Am Corp.,* 166 B.R. 538, 544-45 (S.D.N.Y. 1994) (distinguishing the language defendants' rely upon because the case language cited concerned an *interim* settlement and no lien could attach under those circumstances); *Santander Bank, N.A. v. Warrender*, 760 F.3d 130, 133-34 (1st Cir. 2014) (rejecting attorney lien only because there were no proceeds from a dismissed counterclaim, and any payment received was from third party).

*Third*, Defendants argue incorrectly that even if Quinn Emanuel has an attorney lien, it is invalid because it would violate the Delaware court's order that Nano not take any steps inconsistent with closing the merger. Br. 14-15. Specifically, Defendants argue that "diverting merger consideration" from Desktop Metal and its shareholders to a Desktop Metal lienholder would have been inconsistent with closing the merger. Yet they cite nothing in the Delaware court's order that supports this theory. *Id.*; *see Desktop Metal, Inc. v. Nano Dimension Ltd.*, No. 2024-1303-KSJM, Order and Partial Final J. (Del. Ch. March 24, 2025) (ECF No. 445). Defendants only cited authority is wholly inapplicable. *Compare In re Stream TV Networks*

*Omnibus Agmt. Litig.*, 283 A.3d 1183, 1185-86 (Del. Ch. 2022) (two entities disobeyed court order by choreographing transfer of shares to a different entity than required by the order).

Defendants' position is also entirely contrary to the policy underlying attorney liens. The Second Circuit recognizes that "[s]ection 475 'has provided a lien *in all cases.*'" *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 453 (2d. Cir. 1998) (emphasis added) (citation omitted). Indeed, the Second Circuit has long recognized that district courts have a "responsibility to protect [their] own officers in such matters as fee disputes." *Id.* at 444 (citation omitted). Moreover, "[a]n attorney's charging lien is something more than a mere claim against either property or proceeds; an attorney's charging lien "is a vested property right created by law and not a priority of payment." *LMWT Realty Corp. v. Davis Agency Inc.*, 85 N.Y.2d 462, 467–68 (1995); *see Stair v. Calhoun*, 722 F. Supp. 2d 258, 267 (E.D.N.Y. 2010) (recognizing policy to protect attorney's interest against "knavery of his client") (internal quotations omitted).

Here, Quinn Emanuel's herculean litigation efforts forced Nano to complete the merger and pay the merger consideration. That ruling was in Desktop Metal's favor, it generated identifiable proceeds, and those proceeds were payable for Desktop Metal's benefit. These allegations more than suffice to adequately plead an attorney lien.

### B.  Quinn Emanuel Has Not Waived Enforcement Of The Lien

"Waiver is an affirmative defense," 57 N.Y. Jur. 2d Estoppel, Etc. § 93, and so this Court can find waiver now only if "(i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." *Riccio v. Ford Motor Credit Co.*, 238 F.R.D. 44, 47 (D. Mass. 2006) (citation omitted). Waiver of an attorney lien occurs only if an attorney takes an "action inconsistent with an intent to enforce the lien, including fail[ing] to enforce the lien within a reasonable time." *Fontana,* 962 F.3d at 676-77 (two-year delay is not necessarily too

long) (citation omitted) (alternation in original).  "[A] charging lien . . . may be enforced even when the proceeds have passed into the possession of the client or a third party with knowledge" as long as the attorney did not take actions inconsistent with enforcement.  *Kaplan v. Reuss*, 495 N.Y.S.2d 404, 407 (App. Div. 1985), *aff'd*, 68 N.Y.2d 693 (1986).  Defendants argue that Quinn Emanuel waived its attorney lien because it did not enforce the lien before the merger closed and the merger consideration passed to Desktop Metal shareholders, or during "follow-on litigation." Br. 15-17.  None of these arguments holds water.

*First*, Quinn Emanuel consistently enforced its rights to its attorney's fees during and immediately after the Delaware litigation.  Defendants concede that Quinn Emanuel sought its attorney fees in the Delaware litigation before the merger closed.  Br. 15-16.  Defendants also concede that Quinn Emanuel notified Nano and Desktop Metal in a formal demand letter immediately following the merger closing that it intended to pursue its attorney's fees and "*is entitled to a lien on any amounts received by Desktop Metal from Nano, as explicitly provided in our engagement letter.*"  *See Quinn Emanuel*, No. 652274/2025, NYSCEF Doc. No. 6 at 1; Br. 13 n.2 (conceding the letter is of "undisputed authenticity"); SAC ¶ 56.  That demand letter is more than sufficient to defeat waiver.  *See Schneider, Kleinick, Weitz, Damashek & Shoot v. City of N.Y.*, 754 N.Y.S.2d 220, 226-27 (App. Div. 2002) (law firm did not waive attorney lien when it notified defendant of lien and instituted subsequent action to restrain disbursement of fees).

*Second*, Quinn Emanuel has not unreasonably delayed asserting its rights to the attorney lien merely because it pursued other avenues of relief first.  *See Botein, Hays, Sklar & Herzberg v. Polymetrics Int'l, Inc.*, 366 N.Y.S.2d 251, 256 (Civ. Ct. 1975) (rejecting argument that attorney could not pursue both an attorney lien and other legal remedies because the remedies are "cumulative").  The demand letter said that Quinn Emanuel would pursue its fees against Desktop

Metal, which it did in arbitration and attachment proceedings, and Nano. *See Quinn Emanuel*, No. 652274/2025, NYSCEF Doc. No. 6 at 1; SAC ¶¶ 51, 56-58, 66. This demand letter did not mention the "attorney lien" specifically, but the "New York Court of Appeals has stated that no notice is required to enforce an attorney's lien." *Fontana*, 962 F.3d at 675 n.8.

This case is therefore unlike *Kaplan*, upon which Defendants' rely (Br. 16), which found waiver on summary judgment (not the pleadings) only when the attorney "made no attempt to assert any lien" during prior litigation to collect the judgment. *Kaplan*, 495 N.Y.S.2d at 407.

This case is more like *Fontana v. Republic of Argentina*, 2021 WL 4481874, at *3 (S.D.N.Y. Sept. 30, 2021), which held that an attorney had not waived his right to assert an attorney lien against the defendant, despite waiting two years after settlement to assert it, because the attorney had sought payment by other means from his client. *Id.* at *3-4. So too here: Quinn Emanuel immediately asserted its rights and consistently sought its fees from Desktop Metal before—within five months of the deal's closing—and now sues Defendants. A five-month delay does not constitute waiver. *See Valentini v. 326 E. 30th St. Owners, Inc.*, 173 N.Y.S.3d 479, 479 (N.Y. Sup. Ct. 2022) (law firm acted within reasonable time to assert lien seven months after court order); *see, e.g.*, *Avaras v. Clarkstown Cent. Sch. Dist.*, 2021 WL 5745718, at *6 (S.D.N.Y. Dec. 2, 2021) ("The Second Circuit has generally held that an eight- to eighteenth-month delay" in asserting an attorney lien is unreasonable). None of Defendants cases, which consider much lengthier delays, are applicable. *Compare Hellerstein v. Hellerstein*, 760 N.Y.S.2d 430, 431 (App. Div. 2003) (eight-month delay in asserting lien did not waive enforcement); *with Harley & Browne*, 957 F. Supp. 44, 49 (S.D.N.Y. 1997) (twenty-seventh month delay did waive).

## II.    Quinn Emanuel Plausibly Alleges Its Tortious Interference Claim (Count II)

Quinn Emanuel has also plausibly stated a claim for tortious interference with a contract by Defendants. This claim has four elements: (1) Quinn Emanuel had a contract with Desktop

Metal; (2) the defendants "knowingly induced" Desktop Metal to break that contract; (3) that interference "was improper in motive or means"; and (4) Quinn Emanuel was harmed as a result. *Weiler v. PortfolioScope, Inc.*, 469 Mass. 75, 84 (2014) (citation omitted). Defendants concede that Quinn Emanuel has plausibly alleged (1) and (4). *See* Br. 11. They fail to show that Quinn Emanuel has not plausibly alleged elements (2)-(3): inducement of Desktop Metal's breach and whether their interference was improper in motive or means.

### A.    Nano Caused Desktop Metal To Breach Its Contract With Quinn Emanuel

The SAC alleges more than enough facts to infer that Defendants are responsible for Desktop Metal's refusal to pay. Desktop Metal has admitted on the record that it has yet to pay because its "new owners" are "attempt[ing] to understand the invoices, examine them, and raise any issues." SAC ¶ 71. The SAC also alleges that Nano has "100% ownership of the company, has complete control over the board," and has appointed Mr. Baharav to Desktop Metal's board to "cement its control" over the company. *Id.* ¶¶ 72–73. Nano is even "paying and controlling Desktop Metal's lawyers in the JAMS and New York attachment proceedings," *id.* ¶ 74, and providing "financing to Desktop Metal to help address its short-term liquidity needs and allow it to run its strategic process," *id.* ¶ 72. The Court can easily infer that Defendants—who control Desktop Metal and its purse—have interfered with the company's contractual duty to pay Quinn Emanuel. Contrary to Defendants' assertions (Br. 11–12), the causation theory need not meet Fed. R. Civ. P. 9(b)'s "who, what, when, where, and why" level of specificity.

Defendants' only response to these allegations is that Desktop Metal breached because it is insolvent and that Quinn Emanuel is judicially estopped from denying that fact. Br. 12–13. This is a red herring. An insolvent company is merely one that cannot pay *all* of its debts. The SAC alleges that Desktop Metal was able to pay some bills but that Defendants blocked it from paying Quinn Emanuel anything. Those positions are not inconsistent. *See Alt. Sys. Concepts, Inc. v.*

*Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004) (judicial estoppel does not apply unless a party's positions are "directly inconsistent, that is, mutually exclusive.").

### B.    Defendants Acted With Both Improper Motive And Means

Quinn Emanuel has also met its burden to establish the "reasonable inference" that Defendants had an improper motive *or* used improper means to induce Desktop Metal's breach. *Church v. United States*, 772 F. Supp. 3d 223, 233 (D. Mass. 2025) (citation omitted). Defendants acted out of spite, retaliating against Quinn Emanuel for forcing them to complete the merger. That is an improper motive. And while not required, it also shows actual malice. In the alternative, Quinn Emanuel has adequately pleaded that Defendants used improper means to induce a breach.

*First*, Quinn Emanuel is not required to prove Defendants acted with "actual malice." As for Mr. Baharav, Massachusetts law only applies the actual malice standard for corporate officials "acting in the scope of [their] corporate responsibilities." *Weiler*, 469 Mass. at 84. Mr. Baharav was not. He implemented a plan to stonewall Quinn Emanuel out of spite. Nursing personal grudges—or lining the corporate coffers of a different organization (Nano)—is not within the scope of responsibilities for Desktop Metal's director. In any case, Quinn Emanuel pleads malice, as "motives of retaliation or revenge [] qualify as actual malice." *Robinson v. Spencer Stuart, Inc.*, 2013 WL 3989672, at *7 (D. Mass. Aug. 5, 2013). Defendants call these allegations conclusory. Br. 15. Hardly. The SAC pleads extensive details illustrating that Mr. Baharav acted with similar malice when blocking the takeover, as found by the Delaware Court of Chancery, aiming to let Desktop Metal fall into bankruptcy so that he could scoop up its assets. SAC ¶¶ 24–27, 47. His employment of the same malicious methods in the immediate past—and in connection with the underlying matter—renders Quinn Emanuel's allegations of present ill-will highly plausible. *See Conformis, Inc. v. Aetna, Inc.* 58 F.4th 517, 528 (1st Cir. 2023) ("This inquiry does not demand a plentitude of factual content. . . .For pleading purposes, circumstantial evidence often suffices to

clarify. . . an actor's motive or intent.") (cleaned up).  Further, Defendants have no qualms paying other attorneys to prevent Quinn Emanuel from collecting the amounts owed to it; they are financing Desktop Metal's lawyers in the JAMS and New York attachment proceedings for this exact purpose.  SAC ¶ 74.  They would rather pay anyone else over the lawyers that beat them.

As for Nano, Massachusetts does not require evidence that a corporate parent has a privilege to interfere in its subsidiary's contracts absent actual malice, as Defendants contend (Br. 14).  The Massachusetts Appeals Court expressly declined to endorse this rule.  *See Williams v. B&K Med. Sys., Inc.*, 49 Mass. App. Ct. 563, 577 (2000).  But *Williams* also made clear that, under the law of other states, a corporate parent could invoke this privilege only if it acted for "a legitimate corporate purpose."  *Id.* at 576.  General oversight of a subsidiary's finances is insufficient.  *See id.* (holding no legitimate purpose in terminating a subsidiary's president because there was "no evidence of concern with the plaintiff's performance" or "any matter of direct financial interest" to the corporate parent).  Nano does not meet this threshold requirement, and thus cannot invoke any such (purported) privilege.  There is "no evidence of concern" with Quinn Emanuel's bill: Despite taking time to "examine" the invoices, SAC ¶ 71, Desktop Metal has not "identified any dispute that it has with Quinn Emanuel's bills," *id.* ¶ 61.  Nano also lacks a "direct" financial interest in this contract, formed before the merger and totaling around 3.5% of Nano's available cash and cash equivalents.  *See id.* ¶ 81; *Williams*, 49 Mass. App. Ct. at 576.  Nor did it have a reason to block payment of even a single dollar of Quinn Emanuel's claims.

This Court has found similar allegations sufficient to overcome a motion to dismiss.  *See AngioDynamics, Inc v. Biolitec, Inc.*, 2011 WL 3157312, at *8 (D. Mass. July 25, 2011) (denying motion to dismiss because allegations of a "breakdown of relations" and defendants' decision to "siphon[] millions of dollars" from its subsidiary, interfering with its ability to indemnify plaintiff,

could establish actual malice); *Powderly v. MetraByte Corp.*, 866 F. Supp. 39, 43-44 (D. Mass. 1994) (denying motion to dismiss when parent corporation allegedly "mismanaged [its subsidiary's] business, mischarged expenses and diverted revenues, with the deliberate purpose of depriving [the plaintiff] of his bonus"). By contrast, *Impact Tech. Licensing, LLC v. Barry-Wehmiller Co., Inc.*, 2025 Mass. Super. LEXIS 39, *33 (Mar. 7, 2025) (cited Br. 16), rejected allegations of ill motive when there were no facts at all pleaded in support of the improper motive allegation. *Id.* at *33.

*Second*, Quinn Emanuel has plausibly alleged improper motive—a lower test—for the same reasons. The "propriety of an actor's motives" when interfering with a contract "necessarily depends on the attending circumstances, and must be evaluated on a case-by-case basis." *G.S. Enters., Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 273 (1991). In addition to the above circumstances, Defendants caused Desktop Metal to block all payment, to refuse to confirm "that it intends to pay any part of the bill," and to threaten sanctions against Quinn Emanuel for seeking to recover payment through litigation. SAC ¶¶ 60, 62.

*Third*, the SAC alleges sufficient facts for the court to infer that the Defendants used improper means to induce a breach. *See Weiler*, 469 Mass. at 84. Whether means are improper "depends on the totality of the circumstances surrounding the actions taken." *KACT, Inc. v. Rubin*, 62 Mass. App. Ct. 689, 699 (2004). Typically, a violation of "a statute or a rule of common law" establishes an "improper means" of interference. *Conformis, Inc.*, 58 F.4th at 540 (citation omitted) (explaining "improper means" in parallel tort of interference with advantageous relations).

Defendants' improper means are straightforward. Again, Defendants caused Desktop Metal "to violate its statutory obligations to honor Quinn Emanuel's attorney lien." SAC ¶ 99.

15

Because Quinn Emanuel has plausibly alleged this violation, it "serv[es] to satisfy the 'improper means' element." *Conformis, Inc.*, 58 F.4th at 540 (quoting *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 817 (1990)).  No further showing is required.

Similarly, Mr. Baharav violated his fiduciary duty to Desktop Metal.  "[O]fficers and directors owe a fiduciary duty to protect the interests of the corporation they serve."  *Geller v. Allied-Lyons PLC*, 42 Mass. App. Ct. 120, 122 (1997).  Directors cannot promote their own ends "in a manner injurious to the corporation."  *Id.*  Yet Mr. Baharav did precisely that: he has refused to allow Quinn Emanuel to receive payments and has instead expended cash to prevent Desktop Metal from paying, all to retaliate against the firm for beating Nano at trial.  SAC ¶¶ 82–84.

Defendants also caused Desktop Metal to rush to bankruptcy.  After denying for months that it was insolvent, Desktop Metal notified Quinn Emanuel that it would file for bankruptcy "just three days after the attachment order issued."  SAC ¶ 67.  This was an obvious attempt to prevent Quinn Emanuel from enforcing its rights to payment by making it nearly impossible to perfect the attachment in time, even though the ploy failed.  *See id.*  And Defendants are wrong that rushing to file for bankruptcy cannot constitute an improper means.  Br. 17.  Civil actions *can* constitute improper means if the defendant is not "assert[ing] legitimate rights" but instead "is acting primarily for a purpose other than that of properly adjudicating his claims."  *G.S. Enters., Inc.*, 410 Mass. at 273–74 (lawsuit "motivated simply by a spiteful desire to block development" and "without probable cause to believe that the action would succeed" could constitute improper means).  As alleged, Defendants caused Desktop Metal to file for bankruptcy immediately after the attachment order out of a "spiteful" desire to prevent Quinn Emanuel from obtaining priority with an attachment lien, not because of a legitimate concern for its own legal rights.

### III.    Quinn Emanuel Plausibly Alleges Its Chapter 93A Claim (Count III)

Quinn Emanuel has also sufficiently stated its claim under Massachusetts Chapter 93A. "Chapter 93A liability is decided case-by-case, and Massachusetts courts have consistently emphasized the 'fact-specific nature of the inquiry.'" *Arthur D. Little, Inc. v. Dooyang Corp.,* 147 F.3d 47, 55 (1st Cir. 1998) (quoting *Linkage Corp. v. Trs. Of Boston Univ.*, 425 Mass. 1, 26 (1997). "[A] plaintiff bringing a claim under [Chapter 93A] § 11 must establish (1) that the defendant engaged in an unfair method of competition or committed an unfair deceptive act or practice …; (2) a loss of money or property suffered as a result; and (3) a causal connection between the loss suffered and the defendant's unfair or deceptive method, act or practice." *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 469 Mass. 813, 820 (2014).

The SAC sufficiently pleads all three elements.  It alleges that Defendants engaged in deceptive acts or practices, including by "intentionally directing Desktop Metal not to pay Quinn Emanuel's invoices despite [their] contractual obligations to do so, [u]sing Nano's control over Desktop Metal to advance a premeditated plan to bankrupt Desktop Metal . . . while leaving creditors like Quinn Emanuel unpaid," and "[v]iolating their and Desktop Metal's statutory obligations to honor Quinn Emanuel's attorney lien."  SAC ¶ 104.  Defendants make four arguments for dismissal, none of which is persuasive.  Br. 17–20.

*First*, Defendants seek to dismiss the Chapter 93A claim as duplicative of the attorney lien and tortious interference claims, but this is meritless.  Courts will not dismiss a Chapter 93A claim at the pleadings stage because it is predicated on a tort claim.  *Primarque Prods. Co. v. Williams W. & Witt's Prods. Co.*, 2015 WL 10097150, at *7 (D. Mass. Nov. 18, 2015) (citing cases). Defendants' cases are not to the contrary but instead disposed of Chapter 93A claims post-discovery and post-trial (when it makes sense to eliminate claims to avoid double recovery).  *See Pembroke Country Club, Inc. v. Regency Sav. Bank F.S.B.*, 62 Mass. App. Ct. 34, 41 (2004) (appeal

of judgment on a jury verdict); *Eri/Integral Holdings LLC v. Integral Fund I Inv., LLC*, 2024 WL 3044652, at *11 (Mass. Super. Ct. May 31, 2024) (summary judgment).

*Second*, Defendants incorrectly argue that the claims should be dismissed because "Quinn alleges no facts suggesting that Defendants played any role in Desktop's alleged breach[.]" Br. 18. This is false. *See* SAC ¶¶ 50–84. The SAC alleges, for example, that "Mr. Baharav seized control of Nano and forced it to execute this strategy, while eliminating all dissenters (just as Nano, under his direction, seized control of Desktop Metal)." *Id.* ¶ 70. Similarly, "Nano has also provided Desktop Metal financing to run its business and pay its other creditors, just not Quinn Emanuel." *Id.* ¶ 80. These allegations are sufficiently particularized. *See Speakman v. Allmerica Fin. Life Ins. & Annuity Co.*, 367 F. Supp. 2d 122, 142–43 (grouped "allegations against all defendants" sufficed). This is a far cry from *Schlumberger Tech. Corp. v. Are-Ma Region No. 103, LLC* (cited Br. 18), in which the plaintiff failed to allege that the parent company did anything, let alone played an "active role in … wrongful conduct." 2024 Mass. Super. LEXIS 40, at *3.

*Third*, Defendants fail to establish that dismissal of the Chapter 93A claim is warranted for lack of a territorial nexus. Br. 18–19. "[W]hether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth must be made on the basis of factual findings." *Guest-Tek Interactive Entm't Inc. v. Pullen*, 731 F. Supp. 2d 80, 92 (D. Mass. 2010) (citation omitted). "Since a Court does not make such findings when ruling on a motion to dismiss, it would seem that a motion to dismiss is no longer an appropriate vehicle for raising the issue." *Id.* Defendants' cases concede these points, *CrunchTime! Info. Sys. v. Frischs Rests., Inc.*, 768 F. Supp. 3d 183, 186 (D. Mass. 2025); *HC&D, LLC v. Precision NDT & Consulting LLC*, 2024 WL 4626223, at *7 (D. Mass Oct. 30, 2024).

The SAC adequately pleads a jurisdictional nexus far beyond allegations that Nano's subsidiary has its principal place of business in Massachusetts (*see* Br.19). *See e.g.*, SAC ¶¶ 72, 76–77, 80, 105. "Mr. Baharav is conducting business on behalf of Nano and Desktop Metal" in Massachusetts, including joining the April 30, 2025 investor call—and making deceptive statements thereon—from Boston. *Id.* ¶ 105, *see also id.* ¶¶ 72, 76-77. As for Nano, the SAC alleges that Nano unfairly directed the business operations of its Massachusetts-based subsidiary and provided financing to it. *Id.* ¶¶ 71, 80. The fact that Quinn has offices around the world (*see* Br. 19–20) is irrelevant because "courts have focused more on the location of the wrongful conduct than on the location where the plaintiff suffered injury." *HipSaver Co. v. J.T. Posey Co.*, 490 F. Supp. 2d 55, 71 (D. Mass. 2007). In any case, Quinn Emanuel's Boston attorneys have worked on collection efforts against Desktop Metal, giving rise to a local injury. There is, in short, no other state better equipped to hear this case than Massachusetts.

*Finally*, the SAC satisfies the commercial relationship pleading requirement for Chapter 93A claims. This is also a fact-intensive inquiry that generally should not be resolved on a motion to dismiss. *See Linkage Corp.*, 425 Mass. at 24. (factual review of "whether it arose in a 'business context.'"). But Quinn Emanuel's allegations suffice. Defendants are far more to Quinn Emanuel than "litigation adversaries" (Br. 20). The parties need have only "more than a minor or insignificant business relationship," *John Beaudette, Inc. v. Sentry Ins. A Mut. Co.*, 94 F. Supp. 2d 77, 124 (D. Mass. 1999) (cleaned up), and that the "complained of" conduct be perpetrated "in a business context." *First Enters., Ltd. v. Cooper*, 425 Mass. 344, 347 (1997) (cleaned up). Here, Quinn Emanuel and Defendants are connected by the attorney lien, Desktop Metal's obligation to pay, and Defendants' interference with that obligation. *See* SAC ¶ 54, 85–91; *supra* Section I. Defendants' pattern of interference with payment to Quinn Emanuel for its services clears the low

bar of pleading a business relationship.  *See Arthur D. Little, Inc.*, 147 F.3d at 56–57 (93A claim was beyond "a mere failure to pay a bill" it was "unfair withholding of payment," "stringing out the process, and forcing [Plaintiff] to sue").  The SAC describes Defendants' systematic efforts to sabotage its subsidiary's ability to pay Quinn Emanuel after litigation ended.  SAC ¶¶ 50–84, 92–107.  These allegations are based on Defendants' actions *after* the litigation between Desktop Metal and Nano and *after* Nano had full control of Desktop Metal.  *See id.* ¶ 104.  Defendants cannot shield themselves from liability by ignoring the timeframe of their alleged misconduct.

## IV.    Alternatively, Quinn Emanuel Should Be Granted Leave To Amend

In the alternative, if this Court grants Defendants' motions to dismiss, Quinn Emanuel respectfully requests leave to amend so that it can plead more facts to render its claims even more plausible.  Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a "court should freely give leave" to amend a complaint.  This standard applies "even where a party requests leave to amend after a motion to dismiss has been fully briefed."  *United States ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 195 (1st Cir. 2015); *Iglesias v. HRA Pharma Am., Inc.,* 2023 WL 5277424, at *1 (S.D.N.Y. Aug. 16, 2023) (citing cases).  Quinn Emanuel can and, if needed, will plead additional facts regarding the wrongful conduct that Defendants engaged in, and can timely submit a proposed amended complaint if this Court were to grant Defendants' motion.

## CONCLUSION

This Court should deny Defendants' Motion to Dismiss.

Dated:  September 25, 2025          Respectfully submitted,

/s/ *Alex H. Loomis*
William D. Weinreb (BBO #557826)
Alex H. Loomis (BBO #699129)
QUINN EMANUEL URQUHART
  & SULLIVAN LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
Tel: (617) 712-7100
billweinreb@quinnemanuel.com
alexloomis@quinnemanuel.com

Kevin S. Reed, Esq. (admitted *pro hac vice*)
QUINN EMANUEL URQUHART
  & SULLIVAN LLP
295 Fifth Avenue, 9th Floor
New York, NY 10016
Tel: (212) 849-7000
kevinreed@quinnemanuel.com

Patricia B. Tomasco, Esq. (admitted *pro hac vice*)
QUINN EMANUEL URQUHART
  & SULLIVAN LLP
700 Louisiana St., Suite 3900
Houston, TX 77002
Tel: (713) 221-7000
pattytomasco@quinnemanuel.com

*Attorneys for Plaintiff,*
*Quinn Emanuel Urquhart & Sullivan LLP*

21

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true copy of the above document was filed on September 25, 2025 through the ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: September 25, 2025                    /s/ *Alex H. Loomis*
                                              Alex. H. Loomis